550 F.2d 834
 14 Fair Empl.Prac.Cas. 518,
13 Empl. Prac. Dec. P 11,466,
1 Employee Benefits Ca 1537
Gladys E. ROGERS and Margaret A. Rogers, as Co-Executrices
of the Estate of Dilworth T. Rogers, Appellees in
No. 76-1115, Cross-Appellants in No. 76-1114,
v.
EXXON RESEARCH AND ENGINEERING COMPANY, a Delaware
Corporation, Appellant in No. 76-1115,
Cross-Appellee in No. 76-1114.
 Nos. 76-1114, 76-1115.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 9, 1976.
Decided Jan. 20, 1977.
 
 Murry D. Brochin, Lowenstein, Sandler, Brochin, Kohl & Fisher, Newark, N. J., for Gladys E. Rogers and Margaret A. Rogers; Lewis J. Paper, David W. Mills, Newark, N. J., on the brief.
 Thomas L. Morrissey, Carpenter, Bennett & Morrissey, Newark, N. J., for Exxon Research and Engineering Co.; Shearman & Sterling, New York City, of counsel.
 Richard D. Godown, Gen. Counsel, Robert E. Williams, Washington, D. C., for National Association of Manufacturers of the United States of America, on the Brief as Amicus Curiae; Vedder, Price, Kaufman, Kammholz & Day, New York City, of counsel.
 Before ADAMS and WEIS, Circuit Judges, and FOGEL,* District Judge.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 Although involuntary retirement after lengthy service may be a traumatic experience for an employee, statutory silence circumscribes the relief that can be obtained. We conclude that an Age Discrimination in Employment Act suit may be a proper subject for a jury trial but that there can be no monetary damages for "pain and suffering" in the nature of emotional distress. Accordingly, we vacate a district court's judgment which incorporates a substantial award for such damages.[1]
 
 
 2
 Dr. Dilworth T. Rogers worked for the Exxon Corporation from 1938, except for a one year absence, until his involuntary retirement on September 1, 1969. He contended that his separation from the company was the result of age discrimination and brought suit under the Age Discrimination in Employment Act of 1967, (ADEA), 29 U.S.C. §§ 621 et seq. Dr. Rogers died on March 29, 1973 and his executrices were substituted as plaintiffs. A jury awarded the plaintiffs $750,000 for pain and suffering as well as $30,000 in compensatory damages. The latter amount was doubled by the court because the defendant's conduct had been willful. After plaintiffs accepted a remittitur of $550,000 on the pain and suffering verdict, defendant's post-trial motions were denied, and judgment was entered in favor of plaintiffs.
 
 
 3
 Dr. Rogers was a research scientist who had done extensive post-graduate work in chemistry and had earned a doctorate in that field. Active in professional societies, he was credited with fifty-one patents and, during his service with Exxon, was designated as its first Senior Research Associate. In his early years with the company, promotions and salary increases came fairly frequently but, beginning in 1959, when Dr. Rogers became 50 years of age, his relations with the company began to deteriorate. The plaintiffs asserted that the reversal of his fortunes was the result of Exxon's policy of age discrimination which included a policy of harassment designed to make him leave the company. The defendant, however, contended that Dr. Rogers became frustrated and dissatisfied because he could not climb the administrative ladder of the company.
 
 
 4
 Dr. Rogers, unhappy with his job assignments, the technical facilities designated for his use, and the failure to receive periodic salary increases, found his relationships with superiors and co-workers becoming strained. The tensions of his employment were accompanied by emotional problems which in turn were reflected in his physical health.
 
 
 5
 On March 7, 1969, after a disagreement with a superior over his work, Dr. Rogers left his employment in an emotional turmoil, taking an extended sick leave. In the ensuing months, he suffered a number of physical ailments and a condition diagnosed in part as a situational neurosis. During this period, Dr. Rogers' attending physician and the company medical director exchanged information, the nature of which was disputed at the trial. On August 1, 1969, the company wrote to Dr. Rogers that he would be retired for medical reasons. Despite his protests, the retirement became effective on September 1, 1969, and he received benefits thereafter in accordance with the company retirement plan.[2] At trial, the defense contended that the sole reason for retirement was medical disability.
 
 
 6
 Plaintiffs claimed damages for earnings lost because of the company's failure to grant salary increases before 1969, in addition to the differential between the pension payments and what would have been received had Dr. Rogers continued in active service. Further, claims were made for the emotional and physical problems caused by Dr. Rogers' involuntary retirement, as well as the onerous treatment he had received before that time. The trial court ruled that the plaintiffs were entitled to a jury trial and the ADEA permitted a recovery of damages for pain and suffering.
 
 
 7
 After the jury in the bifurcated trial found liability against the defendant, the parties stipulated that compensatory damages were $30,000. Following the verdict on damages, the parties agreed to submit the question of willfulness to the judge rather than to the jury. The district judge determined the actions of the defendant to have been willful and doubled the compensatory damages to $60,000 as permitted by the statute, 29 U.S.C. § 626(b). However, he held the doubling provision inapplicable to the pain and suffering award.
 
 RETIREMENT UNDER A BONA FIDE PLAN
 
 8
 Defendant raises a number of interesting issues in its appeal, the first of which is the Act's exemption of retirement pursuant to a bona fide plan.
 
 
 9
 The ADEA prevents discrimination in an employee's compensation, terms, conditions or privileges of employment because of age. However, it exempts retirement pursuant to a bona fide pension plan that is not a subterfuge to evade the purposes of the Act, 29 U.S.C. § 623(f)(2).[3] The heart of plaintiffs' case as well as the fundamental premise for the district court's evidentiary rulings and charge to the jury, was that the Act bans involuntary retirement before age 65 even under an otherwise bona fide plan, if age played any part in the decision.
 
 
 10
 We recently examined the legislative history of the ADEA and the purposes behind the § 623(f)(2) exemption in detail and need not repeat our lengthy discussion here. After careful study, we concluded that the Act does not prohibit involuntary retirement at age 60 with an adequate pension pursuant to a bona fide retirement program. Zinger v. Blanchette, 549 F.2d 901 (3d Cir. 1977). We observed that the age discrimination present in most involuntary retirement plans is generally not barred by the Act. Our holding in Zinger, contrary to the district court's theory in the case sub judice, requires that the judgment here be vacated.
 
 
 11
 However, on the record before us, we are unable to enter judgment for the defendant.[4] Moreover, even if Rogers could properly have been retired under the age and service qualification, the claims that he was mistreated and did not receive promotions and salary increases because of age, if proven, constitute arguable violations of the Act.[5] No effort was made to segregate the items of pre-retirement damages from those of the post-retirement period and, consequently, we cannot determine what violations the jury found and whether any sums might be due if the post-retirement events are excluded. Since a new trial must be granted, it is necessary that we review most of the points raised on appeal.
 
 JURY TRIAL
 
 12
 The district court properly refused to strike the plaintiffs' request for a jury trial. The statute does not specify whether trial by jury is available. However, there is a provision that:
 
 
 13
 "(T)he court shall have jurisdiction to grant such legal or equitable relief as may be appropriate . . . including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." 29 U.S.C. § 626(b).
 
 
 14
 Subsection (c) provides that an aggrieved person may bring a civil action for legal or equitable relief.
 
 
 15
 A suit for damages consisting of back wages arising out of the breach of an employment agreement is a routine contract action where the parties would be entitled to a jury under the Seventh Amendment. The fact that the right to recover wages is granted not by common law but by statute does not change the essential nature of the case.
 
 
 16
 "(W)hen Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law." Curtis v. Loether, 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974).[6]
 
 
 17
 The enforcement provisions of the ADEA, 29 U.S.C. § 626, refer to the corresponding sections of the Fair Labor Standards Act, 29 U.S.C. §§ 216, 217, and use the verbiage in those sections in categorizing damages as "unpaid minimum wages, or unpaid overtime compensation." Suits for damages under the Fair Labor Standards Act are within the Seventh Amendment. Wirtz v. Jones, 340 F.2d 901, 904 (5th Cir. 1965); Olearchick v. American Steel Foundries, 73 F.Supp. 273 (W.D.Pa.1947);[7] 5 J. Moore, Federal Practice P 38.27 (1976). In the case sub judice, since Dr. Rogers had died, equitable relief in the nature of reinstatement was not possible and the only remedy sought was money damages.
 
 
 18
 Accordingly, in considering the intrinsic nature of the suit, as well as the ADEA's incorporation of pertinent sections of the Fair Labor Standards Act, we conclude that the parties were entitled to a jury trial. Cleverly v. Western Electric Co., 69 F.R.D. 348 (W.D.Mo.1975); Chilton v. National Cash Register Co., 370 F.Supp. 660 (S.D.Ohio 1974); cf. Morelock v. NCR Corp.,546 F.2d 682 (6th Cir. 1976); Pons v. Lorillard, 69 F.R.D. 576 (M.D.N.C. 1976); Developments in the Law Title VII, 84 Harv.L.Rev. 1109, 1265-1269 (1971).
 
 PAIN AND SUFFERING DAMAGES
 
 19
 While recognizing that no specific provision in the statute or decisional law authorized recovery for emotional and psychic distress, the district court submitted that item of damages to the jury. The trial judge reasoned that the ADEA created a new tort and conferred broad remedial authority upon the courts to redress statutory transgressions. We recognize the thoughtful approach utilized by the district court and the policy reasons which could be cited to support its position.[8] We differ, however, because we believe the statutory plan of enforcement is inconsistent with the district court's expansive interpretation.
 
 
 20
 As we have seen, the ADEA incorporates part of the enforcement powers of the Fair Labor Standards Act.[9] Under the FLSA, the employer is liable to the employee for "unpaid minimum wages or . . . unpaid overtime compensation" and that amount may be doubled to provide for "liquidated damages." In addition, that statute provides for injunctive relief to restrain violations.
 
 
 21
 After the references to the Federal Fair Labor Standards Act, the ADEA correlates the two statutes by stating:
 
 
 22
 "Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: Provided, That liquidated damages shall be payable in cases of willful violations . . . ." 29 U.S.C. § 626(b).
 
 
 23
 In addition, the court is given jurisdiction to grant such
 
 
 24
 "legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section."
 
 
 25
 Although orders to force employment, reinstatement or promotion are equitable in nature, collections of judgments for lost earnings generally are legal actions. The statute does not mention any money damages other than " amounts" measured by "unpaid minimum wages or unpaid overtime compensation" and "liquidated damages."
 
 
 26
 During consideration of the ADEA, various members of Congress commented on the emotional problems caused by inability to secure employment because of age discrimination. Against this background, the court reasoned that to make the victim whole, the statute mandated "legal" relief in the form of an award for psychic distress, characterized as "pain and suffering."[10] We are unable to accept the court's conclusion.
 
 
 27
 While some members did express concern about the anxiety faced by older persons in search of employment, there is no indication that Congress thought the means which it adopted to make employment a reality were inadequate to afford reasonable relief. Thus, the fear of being unable to earn a livelihood in one's later years should be diminished by the availability of court-ordered employment or reinstatement. Congress might well have believed that the resumption of productive work removes the root of the emotional anxiety and the monetary deprivation which occurred in the interim is restored by an award for the actual loss. If the employer's conduct has been such as to merit punitive treatment, then he is to be penalized by doubling the award.
 
 
 28
 Unquestionably, the punitive element is involved to some extent in awards for pain and suffering which are akin to those for emotional distress. It is generally accepted that in a typical tort case the award for pain and suffering varies in proportion to the aggravated nature of the acts establishing liability. In this case, the jury's excessive award of $750,000 for "pain and suffering" is more a condemnation of the defendant's activity than a measurement of the actual distress fairly attributable to the plaintiff's treatment by the company.
 
 
 29
 Congress saw fit to restrict the penalty provisions of the Act to doubling the amount of lost earnings. To allow psychic distress awards in addition would in a very real sense thwart the limitation Congress thought advisable to impose.
 
 
 30
 The district court assumed that a "legal damage" award necessarily included compensation for psychic or emotional distress. But that is not necessarily so. In the field of torts, though the desirability of such compensation has become increasingly accepted in recent years, it is not, even now, universally so. See W. Prosser, Law of Torts § 12 (1971 ed.). In the contract area, such awards are the exception and not the rule, 5 A. Corbin, Contracts § 1076. Congress, legislating on a national basis, would not likely assume that a measure of damages, not uniformly accepted, would be implied in the Act, particularly since jurisdiction is concurrent in both federal and state courts. The mere inclusion of the words "legal relief" is not determinative.
 
 
 31
 The thrust of the ADEA's enforcement provisions is that private lawsuits are secondary to administrative remedies and suits brought by the Secretary of Labor. During hearings on the bills, the congressional committees emphasized that the most favored method of enforcement was conciliation and mediation.[11] Indeed, those who proposed administration of the Act by the Wage and Hour Division argued that it was better equipped to process complaints than the EEOC which was given that responsibility under Title VII.
 
 
 32
 The ADEA provides not only that resort must first be had to administrative remedies before a private suit may be filed, 29 U.S.C. § 626(d), Goger v. H. K. Porter Co., Inc., 492 F.2d 13 (3d Cir. 1974), but also that the right to bring a private suit terminates upon the commencement of an action by the Secretary, § 626(c). An entitlement to an award for pain and suffering without guidelines of any sort is a vague and amorphous concept traditionally found in a private lawsuit but is uncommon in administrative actions. Cf. Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 301 A.2d 754 (1973).[12] Certainly if an award for such an intangible were to be made in an administrative setting, statutory authorization or administrative regulations would be expected. See International Union, Automobile Workers v. Russell, 356 U.S. 634, 643, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); K. Davis, Administrative Law of the Seventies §§ 2.00-2.12 (1976). The ADEA, however, is completely silent on this important and novel point.
 
 
 33
 The introduction of a claim for psychic and emotional distress would present serious administrative problems. While the existence of such an item of damages might strengthen the claimant's bargaining position with the employer, it would also introduce an element of uncertainty which would impair the conciliation process. Haggling over an appropriate sum could become a three-sided conflict among the employer, the Secretary, and the claimant. The same drawbacks would apply in a court suit brought by the Secretary where the question of authority between him and the claimant to decide upon an acceptable amount would create another area of dispute. The ADEA's silence on this contingency is another indication that pain and suffering awards were not contemplated by the draftsmen.
 
 
 34
 The Act provides for determination of the amount of damages by an objective test the amount of lost earnings. While the exact computation may be the subject of disagreement, that type of dispute is familiar to administrative proceedings and generally not difficult to resolve.
 
 
 35
 If mental suffering awards are limited to private lawsuits, then once again the conciliation process is jeopardized. The possibility of recovering a large verdict for pain and suffering will make a claimant less than enthusiastic about accepting a settlement for only out-of-pocket loss in the administrative phase of the case. The net result can only be to substantially increase the volume of litigation in the trial courts, a development Congress did not desire. Although not insurmountable, these administrative difficulties reinforce our conviction that Congress would have provided specifically for pain and suffering damages had it intended to allow them.
 
 
 36
 In view of these several considerations, the statutory silence, and the lack of a supportive legislative history, we hold that damages for "pain and suffering" or emotional distress cannot properly be awarded in ADEA cases.[13] We recognize that the result is a disappointing one to persons in the position of plaintiffs here, but Congress allowed no alternative.
 
 ATTORNEYS' FEES
 
 37
 Section 216(b) of the Fair Labor Standards Act provides that in a suit by an employee the court "shall in addition to any judgment awarded to the plaintiff or plaintiffs allow a reasonable attorney's fee to be paid by the defendant." This provision is incorporated into the ADEA, 29 U.S.C. § 626(b). Consequently, attorneys' fees are to be awarded in age discrimination suits in which the employee prevails. Brennan v. Ace Hardware Corp., 495 F.2d 368, 374 (8th Cir. 1974); Monroe v. Penn-Dixie Cement Corp., 335 F.Supp. 231, 235 (N.D.Ga.1971); cf. Stringfellow v. Monsanto Co., 320 F.Supp. 1175 (W.D.Ark.1970); Note, Age Discrimination in Employment under Federal Law, 9 Ga.St.B.J. 114, 127 (1972).
 
 
 38
 In this case, the district court fixed attorneys' fees based in some degree upon a percentage of the amount recovered for pain and suffering. Since that portion of the judgment is vacated, if the plaintiff succeeds in recovering on other aspects of the case, the district judge no doubt will wish to reevaluate the award for counsel fees.
 
 WILLFULNESS
 
 39
 On June 8, 1973, Judge Leonard Garth, to whom this case was then assigned, formally denied plaintiffs' motion to amend the three year old complaint to allege willfulness. At a preliminary hearing, the judge said:
 
 
 40
 "With respect to the other motion to file the Amended Complaint alleging willfulness, it comes too late. I'm denying that application . . . . The age of the complaint, the problems that we have met, the discovery we have met, if now we open up this matter anew it seems to me it would be completely improvident.
 
 
 41
 "It seems to me that it is ripe for decision and I will so decide. It is denied."
 
 
 42
 Although the pretrial order did not list willfulness as an item to be considered in computing damages, the district judge at the trial decided to entertain that issue. Both counsel agreed that, if the matter was properly in the case, it should be submitted to the court and not to the jury.[14] However, defense counsel properly preserved his objection to the introduction of willfulness into the case.
 
 
 43
 The defendant contends that the trial judge was bound by the earlier order of Judge Garth and thus the issue was no longer in the case. Plaintiffs argue that, since the statute does not specifically require that willfulness be pleaded, it was not necessary to amend the complaint in any event.
 
 
 44
 The defendant relies upon United States v. Wheeler, 256 F.2d 745 (3d Cir.), cert. denied, 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958), for the proposition that one judge of a coordinate jurisdiction cannot overrule another in the same case. But, as the opinion points out, much depends upon the circumstances. If the first judge is no longer available to rule upon the matter, different considerations apply. Judge Garth was elevated to this court shortly after entering the order of June 8, 1973 and, therefore, was no longer available to preside over the case in the district court. Had he continued in the trial court, he would have had the discretion to reconsider the ruling upon changed circumstances either sua sponte or on the motion of a party. Moreover, the matter could have been reconsidered at the pretrial conference. The judges assigned to succeed him in the disposition of the case retained this discretion.
 
 
 45
 The pretrial order did not discuss willfulness. Therefore, the defendant was surely entitled to assume that the issue would not be raised later. Before trial, the plaintiffs asked for neither an amendment to the pretrial order nor for reconsideration of the denial of the motion to amend. Since there must be a retrial, if plaintiffs wish to assert defendant's willfulness, they should move to amend the pretrial order or request an additional pretrial conference. The district judge will then have the opportunity to determine whether the circumstances justify the injection of willfulness into the litigation. We think it better practice to assert the claim for damages based on willfulness in the complaint but, if not included there, certainly the matter should be raised at pretrial.
 
 EVIDENTIARY RULINGS
 
 46
 The defendant raises a number of evidentiary rulings which are said to be erroneous. The trial court's reasoning for most of these rulings relied on the premise that a retirement program based on age is not exempt from operation of the Act. Since we have decided otherwise, the relevancy of the evidence must be reevaluated. We are not disposed to rule on most of these matters because of the changed circumstances. We do, however, have some reservations about the remoteness in time of some incidents introduced to show a policy of discrimination.
 
 
 47
 One matter of evidence does deserve discussion: the destruction of diaries which Dr. Rogers prepared. Defendant contended that Dr. Rogers' emotional problems centered on his inability to get along with fellow-employees, and a number of its witnesses testified to this point. The diaries for the period from 1955 to 1969 related personal difficulties with other Exxon employees as well as details of inventions. Dr. Rogers destroyed the diaries after commencing this litigation and after showing them to the attorney he had originally retained (not present counsel). To justify adverse comment on the incident, the defense offered to read relevant portions of Dr. Rogers' discovery deposition describing the contents of the diaries and his reasons for destroying them. The trial judge refused to admit this evidence on the rationale that the destruction could have been due to many reasons unrelated to the lawsuit and, moreover, defendant had produced other testimony on Dr. Rogers' interpersonal relationships. We believe the proffered testimony should have been received in evidence. Under the circumstances, the destruction of the records could reasonably raise an unfavorable inference. See Stoumen v. Commissioner of Internal Revenue, 208 F.2d 903, 907 (3d Cir. 1953). The reasons for the action are more properly matters for argument to the jury rather than grounds for exclusion. If the jury accepted the inference, it would corroborate the defendant's witnesses on an important part of the case.
 
 EXHAUSTION OF ADMINISTRATIVE REMEDIES
 
 48
 The plaintiff did not file any proceeding before the Division on Civil Rights of the New Jersey Department of Law and Public Safety, the agency responsible for enforcing that state's prohibition against age discrimination in employment.[15] Under § 14(b) of the Act, 29 U.S.C. § 633(b), no suit may be brought until after 60 days have elapsed from the time of commencing proceedings under state law. This requirement is jurisdictional, Goger v. H. K. Porter Co., supra. Ordinarily plaintiff's failure, as in this case, to avail himself of the state administrative remedy would be fatal to his cause of action. However, in Goger, we said:
 
 
 49
 "(W)e nonetheless consider equitable relief to be appropriate in view of the total absence, to our knowledge, of any judicial decision construing section 633(b) during the period involved here and in view of the remedial purpose of the 1967 Act. In the future, however, we think the Congressional intent that state agencies be given the initial opportunity to act should be strictly followed and enforced." 492 F.2d at 17 (footnote omitted).
 
 
 50
 See also Sutherland v. SKF Industries, Inc., 419 F.Supp. 610 (E.D.Pa.1976).
 
 
 51
 Since the suit at bar was filed before our decision in Goger, we think that the same relief must apply here. Accordingly, the district court did not err in ruling that Goger permitted this case to proceed despite the failure to resort to state administrative remedies.
 
 
 52
 The judgment of the district court will be vacated and the case will be remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Herbert A. Fogel, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The opinion of the district court is reported at 404 F.Supp. 324 (D.N.J.1975)
 
 
 [2]
 The amount of the payments was not established at trial. Defense counsel, in a leading question to one of the plaintiffs, inquired if the monthly benefits were not approximately $1,000. Over plaintiffs' objection, the question was stricken before it could be answered. Plaintiffs' counsel, however, at that point stipulated that the retirement plan was bona fide, and we therefore assume that the amount of monthly payment was substantial
 
 
 [3]
 "(f) It shall not be unlawful for an employer
 (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan, which is not a subterfuge to evade the purposes of this (Act), except that no such employee benefit plan shall excuse the failure to hire any individual; . . . ."
 
 
 [4]
 During side bar conferences at the trial and at oral argument in this appeal, the defendant contended that it could have retired Dr. Rogers under its plan providing benefits in conformance with an age and length of service computation. Apparently it was somewhat similar to the one which we found permissible in Zinger, but the Exxon plan was not received in evidence because of plaintiffs' objections. Therefore, we must remand to the district court for completion of the record
 
 
 [5]
 We do not know if the benefits under the medical retirement were inferior to those payable under the age and service provisions. However, the plaintiffs do not contend that the medical retirement was a sham to deprive them of more favorable treatment under the age retirement and, accordingly, that issue is not before us
 
 
 [6]
 Although back pay awards are sometimes described as equitable in nature, see NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48, 57 S.Ct. 615, 81 L.Ed. 893 (1937); Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), that premise does not militate against this position. In J & L Steel, supra, the Court was careful to point out that the award there was the result of an administrative proceeding, not a common law suit. In Albemarle, the Court noted that the award of back pay was discretionary and thus was considered equitable. Here, the statute employs the mandatory "shall."
 
 
 [7]
 These cases were decided before ADEA was enacted, and presumably Congress was aware of them. At least some members assumed that juries would hear ADEA cases. In a colloquy on the floor, Senator Javits said that in an age discrimination suit "(a) jury will answer Yes or No." 113 Cong.Rec. 31255 (1967)
 
 
 [8]
 The district court's opinion was discussed with approval in Note, Age Discrimination Compensatory Damages for Pain and Suffering Held Recoverable Under the Age Discrimination in Employment Act of 1967, 7 Seton Hall L.Rev. 642 (1976). In Combes v. Griffin Television, Inc., 421 F.Supp. 841 (W.D.Okl.1976), the district court held that pain and suffering could be awarded in an ADEA case. Contra Sant v. Mack Trucks, Inc., 424 F.Supp. 621 (N.D.Cal.1976)
 
 
 [9]
 29 U.S.C. § 626(b) refers to the "powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title and subsection (c) of this section (§ 626)."
 
 
 [10]
 The court also drew some analogies from Title VII, 42 U.S.C. § 2000e, which proscribes employment discrimination based on race, color, religion, sex or national origin. That statute provides for back pay, reinstatement, hiring or "any other equitable relief as the court deems appropriate." The two statutes are not consistent because Congress made the ADEA enforcement provisions a hybrid of the Fair Labor Standards Act and Title VII. Thus, it is possible to have lost earnings doubled because of discrimination based on age, but not on race or religion. While it is logically beguiling to interpret the statutes in harmony, their clear language often will not permit it. Consequently, the decisional law under Title VII must be read with this caveat in mind
 
 
 [11]
 See, e.g., S.Rep.No.723, 90th Cong., 1st Sess. 5 (1967); Charme, Age Discrimination in Employment, 11 Colum.J.Law & Soc.Prob. 281, 291 (1975); Agatstein, The Age Discrimination in Employment Act of 1967: A Critique, 19 N.Y.L.F. 309, 319 (1973); Protecting the Older Worker, 6 J.Law Reform 214, 221 (1972)
 
 
 [12]
 In that case the majority permitted an agency to make an award for a "minor or incidental award" for pain and suffering in a discrimination case. Three of the seven justices joined in a strong and well-reasoned dissent
 
 
 [13]
 In Howard v. Lockheed-Georgia Co., 372 F.Supp. 854 (N.D.Ga.1974), and Van Hoomissen v. Xerox Corp., 368 F.Supp. 829 (N.D.Cal.1973), the courts denied recovery for pain and suffering in Title VII cases. Contra Humphrey v. Southwestern Portland Cement Co., 369 F.Supp. 832 (W.D.Tex.1973), rev'd on other grounds, 488 F.2d 691 (5th Cir. 1974). Our decision in Rosen v. Public Service Electric and Gas Co., 477 F.2d 90 (3d Cir. 1973), in referring to "compensatory damages" addressed only retirement benefits, a form of back pay proper in a Title VII case. See Developments Title VII, supra at 1259-1264; Implying Punitive Damages in Employment Discrimination Cases, 9 Harv.Civ.Rights-Civ.Lib.L.Rev. 325 (1974); Duda, Damages for Mental Suffering in Discrimination Cases, 15 Clev.-Mar.L.Rev. 1 (1966)
 
 
 [14]
 The parties have not raised on appeal any question about the right to have a jury pass upon the issue of willfulness and, therefore, we do not decide that point. Cf. Hodgson v. Miller Brewing Co., 457 F.2d 221 (7th Cir. 1972), and McClanahan v. Mathews, 440 F.2d 320 (6th Cir. 1971), decided under the Fair Labor Standards Act and a section of the Portal to Portal Pay Act, 29 U.S.C. § 260. Although ADEA incorporates 29 U.S.C. §§ 255 and 259, it does not mention § 260. The district court in Chilton v. National Cash Register Co., supra at 666, did not comment on this fact in deciding that willfulness was for the court and not the jury. In Cleverly v. Western Electric Co., supra, Judge Becker noted the distinction and held that a jury trial on the issue of willfulness was proper
 
 
 [15]
 N.J.Stat.Ann. 10:5-1 et seq