Richard F. GRIFFIN

v.

FIRST PENNSYLVANIA BANK, N.A.

Civ. A. No. 76–3304.

United States District Court,
E. D. Pennsylvania.

Oct. 25, 1977.

Steven R. Waxman, Philadelphia, Pa., for plaintiff.

John B. Nason, III, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Invoking the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, plaintiff's amended complaint charges that his employment with the First Pennsylvania Bank, N.A. (Bank) was unlawfully terminated by reason of his age. Plaintiff, Richard Griffin, is a forty-seven year old man initially hired by the Bank as a management trainee in 1968. During the course of his employment he received commendable performance ratings, and he was promoted to the position of commercial officer. Plaintiff alleges that in August 1975, departing from its customary practice of giving employees whose performance is unsatisfactory two warnings and an opportunity to correct inadequacies, the Bank notified plaintiff that his employment would be terminated in six weeks. When plaintiff sought unsuccessfully to secure an internal transfer, a Senior Vice President at the Bank informed plaintiff that "there was a possibility that his release would be a temporary lay-off wherein he could be recalled without loss of seniority." (Amended Complaint ¶ 11). On September 25, 1975, plaintiff was terminated. Plaintiff contends that approximately one month later he learned that three younger persons had been transferred into his former department soon after his departure.

In January 1976, plaintiff alleges that he learned for the first time that First Pennsylvania had adopted a "new policy of reviewing terminations of older employees" (¶ 17), and he concluded that he had been terminated because of his age. On March 30, 1976, plaintiff reported his employment grievance to the Secretary of Labor. Plaintiff alleges that no one at the Department of Labor advised him of the necessity of filing a complaint with the Pennsylvania Human Relations Commission (PHRC); rather, the Department unsuccessfully undertook conciliation efforts. In October 1976 plaintiff filed his first complaint in this action.

The ADEA makes it an unlawful employment practice "to discharge any individual . . . because of such individual's age," 29 U.S.C. § 623(a)(1), and it creates a federal cause of action for aggrieved employees, 29 U.S.C. § 626(c). As a prerequisite to filing a case under the ADEA, an employee must satisfy certain prerequisites. He must give the Secretary of Labor at least sixty days notice of his intent to file a civil action, 29 U.S.C. § 626(d), so that the Secretary may undertake "to effect voluntary compliance with the requirements of [the Act] through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b).

Further, plaintiff must file his notice of intent to sue with the Secretary either within 180 days of the occurrence of the unlawful employment practice, 29 U.S.C. § 626(d)(1), or, in the event that the forbidden practice occurs in a state that has a law prohibiting age discrimination and a state agency which affords a remedy for such practices, 29 U.S.C. § 633(b), within 300 days of the unlawful practice or within thirty days of receiving notice of the termination of state proceedings, whichever is sooner. 29 U.S.C. § 626(d)(2) (Supp.1975).

There is no dispute among the parties that Pennsylvania is a state that provides a statutory right against age discrimination in employment and an agency to enforce that right, the Pennsylvania Human Relations Commission (PHRC). The Pennsylvania Human Relations Act (PHRA) makes it "an unlawful discriminatory practice . . [f]or any employer because of . . . age . . . to discharge from employment" one of its employees. 43 P.S. § 955(a) (Supp.1977). The Act authorizes the PHRC to "initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices.". 43 P.S. § 957(f). It further empowers the PHRC to issue cease and desist orders with respect to unlawful discriminatory practices and to order reinstatement with or without back pay. 43 P.S. § 959 (Supp.1977).

Plaintiff in the instant case filed his complaint with the Department of Labor 187 days after his termination, and, in addition, filed no claim with the PHRC at any time. The Bank has moved to dismiss the amended complaint for lack of subject matter jurisdiction on the ground that plaintiff has failed to comply with the statutory prerequisites to suit. We shall deny the motion for the reasons that follow.

## I.

We first address the question of whether plaintiff's failure to file a notice of intent to sue letter with the Department of Labor within 180 days after his termination by the Bank, in itself, deprives him of his cause of action under the ADEA. Since plaintiff did not resort to the PHRC at all, he cannot claim the benefit of the longer 300-day filing period provided in 29 U.S.C. § 626(d)(2) for those employees who do avail themselves of a state remedy. Thus, he must comply with the 180-day filing period of 29 U.S.C. § 626(d)(1). *Cf. Dubois v. Packard Bell Corp.*, 470 F.2d 973 (10th Cir. 1972) (under analogous provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, a plaintiff who fails timely to file with the state agency is deprived of the benefit of the longer federal time period). Thus, if the 180-day period begins to run on the date of plaintiff's termination regardless of the circumstances of the case, this action is time-barred.

■ The question of whether the 180-day filing requirement in the ADEA is an inflexible jurisdictional limitation or a provision analogous to a statute of limitation, and thus open to the application of the equitable doctrines of tolling and estoppel, has not been decided by the Third Circuit. Other courts which have addressed the issue are sharply divided. While there is ample authority for the proposition that the 180-day filing requirement is jurisdictional: *e. g., Ott v. Midland-Ross Corp.*, 523 F.2d 1367 (6th Cir. 1975); *Hiscott v. General Electric Co.*, 521 F.2d 632 (6th Cir. 1975); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195 (5th Cir. 1975); *Powell v. Southwestern Bell Telephone Company*, 494 F.2d 485 (5th Cir. 1974); we nevertheless conclude that the filing period in section 626(d)(1) is more closely akin to a statute of limitation and may be equitably tolled given the proper circumstances. *Accord, Dartt v. Shell Oil Company*, 539 F.2d 1256 (10th Cir. 1976), *cert. granted*, 429 U.S. 1089, 97 S.Ct. 1097, 51 L.Ed.2d 534 (Feb. 20, 1977); *Skoglund v. Singer Company*, 403 F.Supp. 797 (D.N.H.1975).

We reach this conclusion based upon an examination of the legislative history of the ADEA and the cases construing section 626(d)(1). The legislative history of the ADEA does not address the exact question of whether the 180-day filing requirement is jurisdictional; however, the notice requirement of section 626(d)(1) was characterized in the House Report as a "condition precedent" to the filing of a private suit. H.R.Rep.No.805, 90th Cong., 1st Sess., *reprinted* at 1967 U.S.Code Cong. & Admin. News p. 2213. The Fifth Circuit summarized the purpose of the notice requirement as follows:

> It is logical that the 180 day notice was intended to insure that potential defendants would become aware of their status and the possibility of litigation reasonably soon after the alleged discrimination

since the notice goes from the Secretary of Labor on to the employer involved. In turn this would promote the good faith negotiation of employers during the 60 day conciliation period and provide an opportunity for preservation of evidence and records for use at a trial necessitated by failure of negotiation.

*Powell v. Southwestern Bell Telephone Company,* 494 F.2d 485 (5th Cir. 1974).

The purpose of the requirement—the assurance that employers would have adequate and timely notice of possible litigation—is not necessarily undermined by reading the 180-day filing requirement as analogous to a statute of limitations. Statutes of limitation similarly serve the purpose of barring stale claims, yet are subject to equitable modifications under appropriate circumstances. Under such an interpretation, while the filing of an intent-to-sue letter is a jurisdictional prerequisite to a private cause of action, the time limit in which the plaintiff must file may be tolled where the plaintiff is unaware that he is a victim of age discrimination, especially where a plaintiff's lack of knowledge is due, at least in part, to a defendant's concealment. Employers should not be able to discriminate on the basis of age, conceal their actions so that employees do not suspect the reason for their disparate treatment, and then reap the benefit of the short 180-day filing requirement barring the employee's claim. Since the ADEA is remedial and humanitarian legislation, it should be liberally interpreted to effectuate the congressional purpose of ending age discrimination. *Dartt v. Shell Oil Co., supra.* When interpreting section 626(d)(1), its purpose—assuring that employers receive adequate and timely notice of possible litigation—should be balanced against the congressional purpose of ending age discrimination.

An examination of the cases holding that the 180-day filing limit is jurisdictional suggests that they do not necessarily run counter to our conclusion. Other courts have commented on the overbroad usage of the term "jurisdictional" when construing section 626(d)(1) and observed that many other courts which labelled the requirements as "jurisdictional" have actually treated them as analogous to statutes of limitation and thus subject to tolling for equitable reasons.[1] *Dartt v. Shell Oil Co., supra; Skoglund v. Singer Co.,* 403 F.Supp. 797 (D.N.H.1975). For example, in *Edwards v. Kaiser Aluminum & Chemical Sales, Inc., supra,* the Fifth Circuit held that the 180-day requirement was jurisdictional. Nevertheless, that court expressly reserved the question of whether plaintiff's failure to file within 180 days may be excused by the employer's failure to comply with section 627 of the ADEA, requiring employers to post notice of an employee's rights under the ADEA in a conspicuous place. Thus, the court apparently assumed that there may be some equitable reasons for excusing compliance with section 626(d)(1).[2]

1. Section 706(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e), contains a section requiring the filing of a complaint with the E.E.O.C. within 180 days of the alleged discriminatory act. In *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975), the Fifth Circuit held that this requirement was analogous to a statute of limitations. In so holding, the court noted, "Conceptual confusion springs from a court's describing the [filing] requirement as 'jurisdictional' but proceeding on the basis of an analogy to how statutes of limitations have been construed. Statutes of limitations, designed as they are primarily to prevent stale claims, are traditionally thought to be subject to much more flexible construction than statutes which confer subject matter jurisdiction upon courts." *Id.* at 927.

Provisions of the ADEA which are analogous to provisions of Title VII are often given similar interpretations, *Goger v. H.K. Porter Co., Inc.,* 492 F.2d 13 (3d Cir. 1974). The procedural requirements of Title VII have been given a liberal construction in order to serve the remedial purpose of that Act. *E. g., Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Ettinger v. Johnson,* 556 F.2d 692 (3d Cir. 1977); *Beamon v. W.B. Saunders Co.,* 413 F.Supp. 1167 (E.D.Pa.1976). The liberal construction given to procedural requirements under Title VII adds support to our construction of section 626(d)(1) of the ADEA.

2. Other courts have also held that the 180-day filing requirement is jurisdictional. However, careful examination of those cases convinces us that they are distinguishable from the facts

The question before us was addressed by the Tenth Circuit in *Dartt v. Shell Oil Company, supra,* and the Court there concluded:

> We do not contend that a filing of a notice of intent to sue is not a condition precedent to an action under the ADEA. However, the similarities between Title VII and the ADEA, the liberal reading of analogous time limitations in Title VII, the overly broad usage of the term "jurisdictional" by courts interpreting section 626(d) of the ADEA, the remedial nature of the legislation, and the lack of legal training and guidance for many of the ADEA complainants lead us to conclude that while section 626(d)(1)'s notice of intent-to-sue requirement cannot be waived, the 180-day time limitation should be interpreted as being subject to possible tolling and estoppel.

*Id.* at 1260–61. We agree with the reasoning of the Tenth Circuit.

■ Turning to the specific facts of this case, we believe that there are grounds for equitable tolling of the 180-day filing requirement for one month. Plaintiff alleges in his amended complaint that, at the time of his dismissal, he was told that there was a possibility that his release was temporary and that he could be recalled without loss of seniority. (¶ 11) Plaintiff did not suspect that he might have been the object of age discrimination until at least one month later when he learned that three younger individuals had been transferred into his former department. (¶ 16) Since plaintiff's intent-to-sue letter was filed with the Department of Labor 187 days after dismissal, tolling for one month the period in which plaintiff was required to file would bring the plaintiff well within the statutory period. There are no countervailing equities for the defendant here, since the statutory purpose of giving the employer adequate notice is

certainly not thwarted by filing seven days after the statutory period. Thus, we conclude that plaintiff here has alleged facts which justify the tolling of the 180-day period of section 626(d)(1) for one month, and, therefore, plaintiff has met the requirements of that section.

## II.

Finding that plaintiff has met the 180-day requirement of section 626(d)(1), we now address the question of whether plaintiff's claim is barred because of his failure timely to file an action with the PHRC, as required by section 633. We begin our inquiry with *Goger v. H.K. Porter Company, Inc.,* 492 F.2d 13 (3d Cir. 1974).

In *Goger,* a case arising in New Jersey, the District Court dismissed plaintiff's ADEA claim for failing to resort to available state remedies. The Court of Appeals reversed. The majority agreed with the District Court that 29 U.S.C. § 633(b) at least generally required the plaintiff to seek relief from the state agency as a prerequisite to maintaining an ADEA action. But it concluded that plaintiff Goger was entitled to litigate his grievance in federal court because no court had previously held that resort to available state agencies was required. It explained:

> "While we do not consider the failure to file a timely complaint with the appropriate state agency a mere technical omission,[14] we nonetheless consider equitable relief to be appropriate in view of the total absence, to our knowledge, of any judicial decision construing section 633(b) during the period involved here and in view of the remedial purposes of the 1967 Act.[15] In the future, however, we think the Congressional opportunity to act should be strictly followed and enforced. *See Dubois v. Packard Bell*

before us. For example, in *Hiscott v. General Electric Company,* 521 F.2d 632 (6th Cir. 1975), the Sixth Circuit assumed arguendo that the filing period could be tolled, but held that the notice actually given by the plaintiff was not adequate "intent-to-sue" notice mandated by the statute. *See also Powell v. Southwestern Bell Telephone Co.,* 494 F.2d 485 (5th Cir. 1974)

(plaintiff filed intent-to-sue letter more than one year after alleged discriminatory act); *Ott v. Midland-Ross Corp.,* 523 F.2d 1367 (6th Cir. 1975) (plaintiff filed intent-to-sue letter within 180-day period but then withdrew complaint; court stated that filing requirement is jurisdictional in alternative holding).

*Corp.,* 470 F.2d 973 (10th Cir. 1972). For the reason stated in the first sentence of this paragraph, we need not decide on this record whether a plaintiff must always proceed first before state agencies." *Id.* at 16–17.

Frankly, we find this language not entirely helpful. If, as the first two sentences of the quoted passage imply, only those complaints filed prior to the decision in *Goger* on January 31, 1974 may be excused from timely filing with appropriate state agencies as a prerequisite to maintaining an ADEA action, then plaintiff Griffin's amended complaint must be dismissed since he has not filed with the PHRC. If, on the other hand, *Goger* leaves open the question of whether there may be other equitable considerations that excuse an ADEA plaintiff's failure to resort to a state agency, as the last quoted sentence implies, then we are free to answer that question, and, if necessary, decide whether equitable considerations excuse Griffin's failure to file with the PHRC.

The footnotes and citation in the quoted paragraph provide no decisive clues to the meaning of *Goger.* With respect to whether the failure to file before a state agency is a "mere 'technical omission.'" Footnote 14 reads as follows:

> "*Cf. Love v. Pullman* [404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)], *Sanchez v. Standard Brands, Inc.* [431 F.2d 455 (5th Cir. 1970)], *Choate v. Caterpillar Tractor Co.* [402 F.2d 357 (7th Cir. 1968)]."

*Love* involved a complaint seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* that was dismissed by lower federal courts for noncompliance with filing requirements analogous to those in the ADEA. The precise defects that formed the basis of the dismissal were reference to the appropriate state agency by the EEOC, as opposed to the filing by the complainant himself, and oral rather than written reference to the state agency. The Supreme Court reversed, holding that these procedures were insubstantial procedural technicalities, and that the Congressional intent to defer in the first instance to appropriate state agencies was satisfied by giving the state agency the first opportunity to resolve the dispute. *Sanchez* and *Choate* are two other Title VII cases predating *Love,* which held that various procedural shortcomings with respect to the exhaustion of EEOC remedies were insignificant, so long as the EEOC was given the opportunity to satisfy the Congressional purpose of resolving employment discrimination claims by conciliation prior to resort to litigation. None of those cases were under the ADEA, and, moreover, none involved the complete failure to resort to appropriate state agencies for resolution of claims of discrimination before resort to federal remedies. Indeed in *Love* the Supreme Court noted that the Colorado agency had expressly declined to hear the complaint.[3]

---

**3.** The *Goger* Court's citation to *Dubois v. Packard Bell Corp., supra,* suggests the type of strict compliance with filing requirements that the Court envisioned in ADEA cases. *Dubois* was a Title VII case that arose in New Mexico, another state with a state agency empowered to remedy sex and race discrimination. The plaintiff in that case filed with the New Mexico Human Rights Commission, but her complaint was dismissed for noncompliance with that state agency's ninety-day limitation period. She then filed with the EEOC. The EEOC failed to conciliate the dispute, and plaintiff filed her federal complaint. The Court of Appeals for the Tenth Circuit affirmed the dismissal of the complaint. Section 706(d) of Title VII permitted a plaintiff ninety days to file a complaint with the EEOC, but where a state agency is empowered to remedy the grievance,

the sooner of thirty days after the termination or 210 days after the unlawful employment practice. Plaintiff, who filed⸱ her complaint more than ninety days after the alleged discrimination occurred, sought to claim the benefit of the thirty days after the termination of state action provision, on the theory that the New Mexico agency's dismissal for untimely filing was a termination of proceedings within the meaning of section 706(d). Without reaching the question of whether or not timely filing with the state agency was a jurisdictional prerequisite, the Tenth Circuit held that plaintiff could not claim the benefit of the thirty day provision, reasoning that plaintiff could thereby frustrate the Congressional purpose of permitting state agencies to remedy charges of sex and race discrimination by simply waiting until the state statutory filing period lapsed to file

The Third Circuit also considered the requirements of section 633 in *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir. 1977). The *Rogers* Court cited *Goger* for the proposition that filing with a state agency is a jurisdictional prerequisite under the ADEA, but excused plaintiff from compliance since the suit was filed prior to the *Goger* decision. *Id.* at 844.

As noted above, we do not consider the word "jurisdictional" to be talismanic. Many courts, such as the Third Circuit in *Rogers*, have used that term to describe a procedural requirement and yet excused compliance with that requirement for equitable reasons. See *Dartt v. Shell Oil Co., supra*, for a discussion of this point. Thus, we believe that *Rogers* left open the same questions raised by *Goger*; namely, whether there may be equitable considerations other than those peculiar to *Goger* which would excuse plaintiff Griffin's failure to file with the PHRC. We consider ourselves free to decide that question because we conclude that the Court of Appeals has left that question open.

The legislative history gives no real clue to whether equitable considerations may excuse failure to file with the state agency. See H.R.Rep.No.805, 90th Cong., 1st Sess., *reprinted* at 1967 U.S.Code Cong. & Admin. News pp. 2218–19. However, it should be noted that section 633 does not require exhaustion of state-provided remedies; it only requires that a plaintiff give the state agency sixty days to process the complaint. *Goger v. H.K. Porter Company, Inc., supra* at 15. Thus, we may infer that Congress, while concerned with giving the states the first opportunity to deal with a possible discriminatory act, did not wish to unduly hamstring a plaintiff in seeking redress of his grievance under the ADEA.

In addition, several courts have excused a plaintiff from filing with the state agency for equitable reasons. *See Smith v. Schlitz*

*Brewery Co.*, 419 F.Supp. 770 (D.N.J.1976); *Arnold v. Hawaiian Telephone Co.*, 11 EPD ¶ 10,786 (D.H.1976); *Vazquez v. Eastern Air Lines, Inc.*, 405 F.Supp. 1353 (D.P.R.). In *Arnold v. Hawaiian Telephone Company*, for example, the court stated that the requirement of section 633(b) may be waived in cases "where the plaintiff has justifiably and detrimentally relied upon official advice in neglecting to pursue state remedies." 11 EPD ¶ 10,786. In view of the remedial nature of the ADEA, we believe that procedural requirements such as that contained in section 633(b) should be liberally construed.

■ We conclude that filing with a state agency is not a jurisdictional prerequisite to a suit under the ADEA and, given the appropriate equitable circumstances and assuming there are no countervailing policies, may be excused.

■ There are several equitable considerations here which suggest that plaintiff should be excused from his failure to file with the PHRC. First of all, plaintiff, a layperson, was unaware of the state agency filing requirement and was never informed of that requirement by the Department of Labor. On the contrary, the Department of Labor accepted his complaint and attempted conciliation of plaintiff's claim. Reliance upon advice of the Department of Labor has been considered a factor justifying a plaintiff's failure to file with the state agency under the ADEA. *Arnold v. Hawaiian Telephone Co., supra; Vaughn v. Chrysler Corporation*, 382 F.Supp. 143 (E.D. Mich.1974). In *Goger*, the plaintiff was not told by the Department of Labor of the state filing requirement, although the Third Circuit did not expressly rely on that ground in their decision. 492 F.2d at 16. Furthermore, plaintiff did not retain counsel until June 25, 1976, two months after filing his complaint with the Department.

with the state agency and then filing with the EEOC within thirty days after the state agency dismissed the complaint. We read *Goger's* citation of *Dubois* to mean that the Third Circuit will not condone either a plaintiff's deliberate failure to file with the state agency or an intentional late filing designed to circumvent the expressed Congressional purpose. *Cf. Goger, supra* at 17–18 (Garth, J., concurring); *Smith v. Schlitz Brewing Co.*, 419 F.Supp. 770 (D.N.J. 1976).

As noted by the Supreme Court in *Love v. Pullman, supra,* with respect to procedural requirements under Title VII, "Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Id.* 404 U.S. at 527, 92 S.Ct. at 619.

Even if plaintiff had filed with the PHRC at the time he filed with the Department of Labor, his filing would not have been deemed timely under the PHRC, which has a 90-day filing limit. In effect, such filing would have been a futile act, and it serves no purpose to penalize the plaintiff here for not doing a futile act. *See, e. g., DeFigueiredo v. Trans World Airlines, Inc.,* 322 F.Supp. 1384 (S.D.N.Y.1971), where the court held that, under Title VII, a male flight purser alleging sex discrimination was not required to file a complaint with the E.E.O.C. prior to maintaining an action in federal court. The court concluded that filing with the E.E.O.C. would be "a futile ceremony," since the same issues had been determined by the E.E.O.C. in an action brought by female flight attendants. *Id.* at 1387.

It should be emphasized that the filing period provided under the PHRA is 90 days less than under the ADEA. Thus, it is possible for a plaintiff to file an untimely state complaint and still be able to file a timely intent-to-sue letter with the Department of Labor. In *Bertsch v. Ford Motor Company,* 415 F.Supp. 619 (E.D.Mich.1976), the court held that an untimely filing with the state agency does not bar a claim under the ADEA, where the state filing limitation is significantly shorter than 180 days. In considering the analogous statutory requirements under Title VII, the courts have similarly concluded.[4] *E. g., Davis v. Valley Distributing Co.,* 522 F.2d 827 (9th Cir. 1975); *DeGideo v. Sperry-Univac Co.,* 415 F.Supp. 227 (E.D.Pa.1976). This result appears reasonable, since to hold otherwise would in effect impose a state-created limitation period, shorter than that mandated by federal statute, on a federal cause of action.[5] *Olson v. Rembrandt, supra,* at 1232.

We are cognizant that plaintiff has not simply filed an untimely complaint with the state agency; he has not filed at all. However, we believe that there is no policy under the ADEA which warrants making a distinction between the two situations in the case before us. The policy behind the state agency filing requirement is to accord the state agency sixty days to resolve the dispute between the parties. *Goger v. H.K. Porter Company, Inc., supra.* This policy is not thwarted where the state agency would not have acted on the complaint because of the untimeliness of the filing.

Finally, there is no suggestion here that plaintiff attempted to circumvent the state-created remedies for age discrimination and thus evade the Congressional intent that state agencies be resorted to first. *See Bertsch v. Ford Motor Company,* 415 F.Supp. at 625.

---

4. *Cf. Olson v. Rembrandt Printing Co.,* 511 F.2d 1228 (8th Cir. 1975) (en banc); *Dubois v. Packard Bell Corp., supra.* In both of these cases, the courts were asked to decide which federal limitation period applies under Title VII where a plaintiff has untimely filed with the state agency. In neither *Olson* nor *Dubois,* unlike the case before this court, did the plaintiff timely file with the applicable federal agency. *Dubois* held that the plaintiff must file his *federal* complaint within the shorter federal time period, 470 F.2d at 975, while *Olson* held that only the *state* charge must be filed within the shorter federal period. 511 F.2d at 1233. Neither case, however, held that an untimely state filing bars a Title VII action and, in fact, the disposition of the cases suggests that the courts assumed that such was not so.

5. The Supreme Court, in considering whether state statutes of limitation apply to causes of action brought by the EEOC pursuant to Title VII, recently stated: "State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. . . . State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute." *Occidental Life Insurance Company of California v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (June 21, 1977).

In sum, although filing with the state agency is generally a prerequisite to suit under the ADEA, we conclude that equitable considerations other than those enunciated in *Goger* may justify the failure to file with the state agency as required by section 633 of the ADEA. We further conclude that such considerations exist in the instant case.