Alfred PIRONE, Plaintiff,

v.

The HOME INSURANCE COMPANY, Defendant.

Daniel F. GUTHRIE, Plaintiff,

v.

The HOME INSURANCE COMPANY, Defendant.

Vito V. FERRARA, Plaintiff,

v.

The HOME INSURANCE COMPANY, Defendant.

Charles A. BARKER, Jr., Plaintiff,

v.

The HOME INSURANCE COMPANY, Defendant.

Nos. 79 Civ. 2417, 79 Civ. 4924, 79 Civ. 4925 and 79 Civ. 6642.

United States District Court, S. D. New York.

Feb. 6, 1981.

McKenna & Schneier, Valley Stream, N. Y., for plaintiffs; Patrick M. McKenna, Valley Stream, N. Y., of counsel.

Kelley Drye & Warren, New York City, for defendant; Eugene T. D'Ablemont, John F. Gibbons, and Paul L. Bressan, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs, Alfred Pirone, Daniel Guthrie, Vito Ferrara, and Charles Barker, Jr., have brought these four actions against their former employer, the Home Insurance Company, which terminated their employment in April, 1978. Plaintiffs, who are all between the ages of 40 and 65, allege that age was a significant factor in their terminations, and that by terminating them defendant violated the federal ban on age discrimination. Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The precise circumstances surrounding their terminations need not be recited at length, but it should be noted that Pirone, Guthrie and Ferrara were all advised of their fate at the same meeting on April 14, 1978. Barker was advised of his termination a week later on April 21, 1978. It is a disputed factual issue between the parties whether the terminations were caused by necessary staff reductions, or whether defendant's claimed need to reduce staff was a pretext for firing based on other motives, including age. All four employees were summarily discharged without advance notice. Pirone had been employed by the Home Insurance Company for thirty-four years. Guthrie, Ferrara and Barker had acquired sufficient seniority that each was within two years of having his employer-provided pension vest.

Defendant now moves for summary judgment, pursuant to Rule 56, F.R.Civ.P., on two alternative grounds: each plaintiff's alleged failure to provide a timely, written charge to the Department of Labor, as required by § 626(d) of the ADEA, and the merits of the cases themselves. Defendant's motion is denied at this time with respect to all four plaintiffs, although for reasons which this opinion will make clear, Pirone's case now stands on a different footing from those of Guthrie, Ferrara and Barker. In all four cases there are sufficient factual issues in doubt to make resolution of the merits on a summary judgment motion inappropriate. In Pirone's case we now hold that suit is not barred by any procedural default, but for Guthrie, Ferrara and Barker we hold only that the issue of a procedural bar cannot be decided without a separate evidentiary hearing, to be held prior to trial on the merits.

*Procedural Issues*

The issue of timely, written notice to the Department of Labor is problematic for all four plaintiffs, although the nature of the problem varies by individual. Section 626(d) provides in pertinent part that:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—

... within 300 days after the unlawful practice occurred.[1]

Pirone contends that he filed two written charges with the Department of Labor. The second is uncontested, but was not filed until March 2, 1979, 322 days after his notice of termination. The first consisted of an interview of Pirone on April 17, 1978, reduced to writing by Stanley Friedman, Assistant Area Director of the Department

1. The limitations period is 300 days in states which have a procedure for conciliation by state agencies, and 180 days in states which do not. 29 U.S.C. § 626(d). Since all plaintiffs were employed in New York and gave notice to the New York State Division of Human Rights, the appropriate state agency, the 300-day limitations period is applicable.

of Labor's Wage and Hour Division for its Manhattan office. Pirone has submitted a copy of this writing which mentions Home Insurance Company by name and specifically charges it with age discrimination. Although Friedman did not at the time consider his writing to be a "written charge" filed on Pirone's behalf, he neglected to inform Pirone that any additional contact with the Department was necessary to preserve his right to sue. Pirone's continuing interest in preserving his right is demonstrated by his two attempts to file complaints with the New York State Division of Human Rights ("SDHR"), one immediately following his meeting with Friedman, and the second on September 5, 1978. Prior to the expiration of the 300-day period Home Insurance Company was notified of Pirone's allegations against it, and the Department of Labor attempted to conciliate the matter.

▆▆ Taken together the above would suffice to toll the 300-day limitations period, see discussion *infra* at 1288–1290, so that the charge filed March 2, 1979, could then be considered timely. A letter of December 13, 1978, to Pirone from Norman Bromberg, Friedman's immediate superior, renders such tolling unnecessary. Bromberg's letter states:

> This is to acknowledge receipt of the information you furnished us about the practices by the Home Insurance Co., 59 Maiden Lane, New York, N.Y., which you believe to be unlawful under the Age Discrimination in Employment Act, (ADEA)....
>
> We are considering your complaint of 11/27/78 as a "charge" under the Act. Thus, unless you advise otherwise, the employer will be advised that you have filed the charge and conciliation will be begun.

It would appear that the literal requirements of § 626(d) were satisfied by a third charge which escaped Pirone's memory, and which he neglected to mention in his initial pleadings.

Guthrie's case and Ferrara's case present factual circumstances which are similar for the two cases. Both filed detailed written charges with the Department of Labor af-

ter the expiration of the 300-day period. Guthrie's was sent on April 5, 1979, and Ferrara's on April 6, 1979; thus the two were late by 56 and 57 days, respectively. Prior to this time neither had any direct contact with the Department of Labor, although both are mentioned in the written record of Pirone's April 17, 1978 interview as employees aggrieved of the same action as Pirone. Guthrie and Ferrara now contend that Pirone's interview reduced to writing constituted their charges as well as Pirone's. Alternatively, they argue that the 300-day limitations period should be tolled, so that their subsequent charges will be considered timely. Their situation is rendered poignant by the fact that although they notified the SDHR in time to have their cases considered, the latter did not apprise them of the need to sign and verify a formal complaint until after the state one-year limitation period had expired. Thus, the federal forum is now the only tribunal in which their cases can be heard on the merits.

Barker's situation is also problematic. On May 10, 1978, approximately three weeks after his discharge, Barker sent a letter to both of his Senators in which he stated:

> I would like to call your attention to a practice by a major corporation which appears to be a violation of the pension reform act... I was formerly an employee of the Home Insurance Companies. During a recent reorganization of the Companies, a number of employees were laid off, with a significant number of them being employees in their forties and fifties who with nine years service were within one year of vesting their pension rights. Without exception, they were replaced by younger employees with less service. [This] ... should be called to the attention of the Labor Department for investigation.

Copies of this letter were forwarded to the Department of Labor which, according to a letter of Department official Laurence G. Davey, attempted to conciliate with the defendant regarding the allegations contained

in the May 10 letter. However, defendant maintains that conciliation took place only with regard to a possible violation of the pension reform act, ERISA, and not with regard to ADEA *per se*. An August 14, 1978 letter from Barker to Davey informed the latter that a second complaint was being forwarded to him through Senator Williams' office and made allegations of age discrimination more explicitly than in the previous letter. Nevertheless, in a June 20, 1980 letter to defendant a Department of Labor official concluded that the Department had no record of any age discrimination charge filed by Barker.

Since the ADEA was amended in 1978,[2] it has been established that the 300-day time limit is not a jurisdictional prerequisite for suits being brought, but is subject to equitable tolling under appropriate circumstances. *See* House Conf. Report 95-950, *supra*, p. 12, 1978 U.S.Code Cong. and Admin. News, pp. 504, 528, 534. Also *see Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir. 1978); *Fulton v. NCR Corp.*, 472 F.Supp. 377, 383 (W.D.Va.1979). Our inquiry with regard to Guthrie, Ferrara and Barker must pass through two stages, first whether the requirements of § 626(d) were met within the 300-day limitations period, and secondly, if not, whether there are circumstances which would justify tolling the limitations period to render the subsequent filings timely.

Guthrie's and Ferrara's sole basis for claiming that they satisfied the filing requirement within 300 days is their contention that Pirone's April 17 interview with Friedman constituted their charge as well as Pirone's, since their names were mentioned as persons similarly aggrieved. We have no difficulty in holding as a matter of law that an interview reduced to writing, but not signed, can be construed as a charge, and that one individual can issue a charge on behalf of another. The critical issue is whether specific circumstances surrounding Pirone's interview justify considering the charge he filed one presented on behalf of Guthrie and Ferrara as well. Although we reserve judgment regarding that question, we note that on the record before us, it appears unlikely that plaintiffs' contention could be upheld.

For cases initiated after April 6, 1978, the effective date of the 1978 Amendments to the ADEA, Pub.L. No. 95-256, the legislative intent expressed in the amendments is controlling and supersedes previous case law. Prior to the amendments it had been noted that many potentially meritorious suits were being frustrated by the procedural requirements of § 626(d). Accordingly, the Senate Committee Report recommended abolition of the 300-day time limit altogether. Senate Report (Human Resources Committee) No. 95-493, October 12, 1977, 1978 U.S.Code Cong. and Admin. News, p. 504. Compromise with the House Committee resulted in maintaining the limitations period, but altering the language of § 626(d) to make filing requirements less technical. The purpose of the amendment was to "make it more likely that the courts will reach the merits of the cases of aggrieved individuals. . . ." Joint Explanatory Statement of the Committee of Conference, No. 95-950, 1978 U.S.Code Cong. and Admin.News, p. 534. In order to give effect to the intentions of Congress, it is essential that the procedural requirements of the ADEA "be interpreted so as to frustrate a potentially meritorious claim only when it is necessary to advance a substantive goal" of the Act. *Franci v. Avco Corp.*, 460 F.Supp. 389, 394 (D.Conn.1978). Similarly, the statute "should be liberally construed so as to avoid frustrating potentially meritorious claims on hypertechnical grounds." *Reich v. Dow Badische Co.*, 575 F.2d 363, 375 (2d Cir.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978) (Feinberg, J., dissenting).

---

**2.** The applicability of the Amendments, Pub.L. No. 95-256, to the cases at bar is not in doubt. Except for cases arising under collective bargaining agreements which are not relevant here, the effective date of the Amendment is April 6, 1978. *See* 29 U.S.C. § 626 (pocket part at 89). Plaintiffs were terminated on April 14, 1978 and April 21, 1978. So even if the Amendments were applied only where termination had occurred after their effective date, they would still be applicable here.

Where changes in the wording of § 626(d) appear to broaden the range of types of charges that will be valid, recognition should be given to the expanded scope unless there are compelling indications of Congressional intent to the contrary. Conversely, we would be loathe to imply any procedural requirements not present in the literal wording of the amended statute. *Cf. Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (refusing to imply a requirement that filing with state agency occur within the time limitations period of the state in order for the procedural prerequisite of § 633(b) to be satisfied.)

■ The 1978 Amendments, changed the wording of § 626(d) from "No civil action may be commenced by any individual under this section *until the individual has given* the Secretary not less than sixty days' notice of an intent to file such an action," to "No civil action may be commenced by an individual under this action *until 60 days after a charge alleging unlawful discrimination has been filed* with the Secretary. Such a *charge shall be filed* — . . . ." (emphasis added). Unlike the older version, the section as amended does not explicitly require that the aggrieved individual personally file the charge, merely that it be initiated on his behalf. However, the circumstances under which a charge provided by a third party will be valid are limited.

■ The Conference Committee Report makes clear that a valid charge must be in writing. Of the Amendments it states:

This change in language is not intended to alter the basic purpose of the notice requirement, which is to provide the Department with sufficient information so that it may notify prospective defendants and to provide the Secretary with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation. Therefore, the conferees intend that the "charge" requirement will be satisfied by the *filing of a written statement* which identifies the potential defendant and generally describes the action believed to be discriminatory.

1978 U.S.Code Cong. & Admin.News, p. 534. (emphasis added). Also see *Fulton v. NCR Corp., supra*, 472 F.Supp. at 389. In order for these purposes to be served a charge must clearly inform Department of Labor officials that an individual perceives himself to be a possible victim of age discrimination, and either contemplates bringing suit under the ADEA or desires that the Department undertake informal conciliation of his case. No charge presented by a third party could so inform officials unless it included statements that the third party was authorized by the aggrieved individual to speak on his behalf. So, while a writing which contains the essential elements of a valid charge will not be rendered invalid simply because it is prepared by Department officials rather than by the aggrieved individual, we cannot assume that such a charge will be valid for all individuals whose names are mentioned in it. Taken by itself, Pirone's interview reduced to writing does not contain sufficient information about Guthrie's and Ferrara's intentions or their authorization of Pirone to file on their behalf. Indeed, Pirone's own action would seem to negate such authorization. When he pursued his own claim before SCHR, he did not include Guthrie and Ferrara. Unless the Department of Labor can be shown to have had additional written materials supporting Guthrie's and Ferrara's assertion, that assertion must be rejected. However, the matter is not foreclosed. Final determination will be made on the basis of evidentiary proof.

■ Barker's letters present a somewhat different problem. The letters were prepared by Barker himself, and included a request that they be forwarded to the Department of Labor. Thus, no difficulty is posed by the fact that they were sent originally to Barker's Senators. Problems arise because they were forwarded to the wrong division of the Department of Labor rather than to the Wage and Hour Division as contemplated by the ADEA, and the first letter at least was concerned principally with possible violations of ERISA. Neither defect by itself should necessarily be fatal. There is no requirement in § 626(d) that the

charge be concerned *solely* with age discrimination. A charge simultaneously alleging age discrimination and violations of ERISA would be valid, provided both allegations were expressed with sufficient clarity. Barker's May 10 letter, however, alleged ERISA violations explicitly while including charges of age discrimination only by implication. The fact that the one was explicit and not the other certainly undermines the contention that the May 10 letter was intended as an age discrimination charge. The problem is further compounded by the fact that the letters went to a division of the Department which was concerned with pension reform and not age discrimination. This also could tend to detract from the contention that an age discrimination complaint was purposed. Nonetheless, these matters do not exhaust the inquiry. The ultimate and controlling test must be whether any of Barker's written communications with the Department of Labor prior to the expiration of 300 days contained sufficiently unequivocal assertions of age discrimination that Department officials should have known to forward the charge to the Wage and Hour Division. If no such clear assertions were made, then it is immaterial that Department officials could have discerned a likelihood of age discrimination from the facts alleged.

*Equitable tolling of the limitations period*

■ While mere ignorance of the requirements of § 626(d) will not by itself justify tolling the limitations period, *see Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 193 (3d Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), ignorance that is partly attributable to the employer's failure to comply with its statutory obligation to post the required conspicuous notice, 29 U.S.C. § 627, will mandate tolling until the prospective plaintiff acquires actual knowledge of the requirements. *Skoglund v. Singer Company*, 403 F.Supp. 797 (D.N. H.1975). Title 29 U.S.C. § 627 provides:

> Every employer ... shall post and keep posted ... upon its premises notice to be prepared or approved by the Secretary setting forth information as the Secre-

tary deems appropriate to effectuate the purposes of this chapter.

The employer's duty is further specified by a Department of Labor regulation that "notice must be posted in prominent and accessible places where it can readily be observed by employees, applicants for employment and union members." 29 C.F.R. § 850.10. Since it is indispensable to the functioning of the ADEA that employees be aware of the procedural requirements of the Act, courts have demanded strict compliance with the posted notice requirement. *See Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Charlier v. S. C. Johnson & Son, Inc.*, 556 F.2d 761 (5th Cir. 1977); *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976), *aff'd by an equally divided court*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270, *reh. denied* (1977), 434 U.S. 1042, 98 S.Ct. 785, 54 L.Ed.2d 792 (1978). Rigorous adherence to the mandate of § 627 is considered essential "because constructive notice often falls far short of its intended purpose," of providing actual knowledge in a timely fashion. *Charlier, supra*, 556 F.2d at 764.

■ Compliance with the literal wording of § 627 is a necessary but not a sufficient condition of adequate compliance. The employer must post and keep posted at least one conspicuous notice prepared by the Department of Labor. In addition the various forms of notice given must be calculated to "provide employees with a meaningful opportunity of becoming aware of their ADEA rights so that one may reasonably conclude that the employees either knew or they should have known of their statutory rights." *Charlier, supra*, 556 F.2d at 764. Notice that is adequate for employees in one location will not necessarily be adequate for those in another. *Id.*

■ The adequacy of Home Insurance Company's posted notice is a factual question yet to be resolved. There are some indications in the pleadings that its notice may have been sufficient. Unlike the poster described in *Dartt v. Shell Oil Co., supra*, 539 F.2d at 1262 n.5, Home Insurance

Company's poster sufficiently informed anyone reading it of the specific requirements of § 626(d). Thus it could not be deemed inadequate on the basis of its contents.

Although only a single notice was posted, it was a poster 17″ x 11″ which was placed on a glass-enclosed bulletin board 44″ x 23″ which was visible at all times. The bulletin board contained other notices pertaining to employee rights and benefits and was located next to the Medical and Benefits Departments as well as near the Employee Lounge. Defendant asserts that employees could be expected to frequent these areas, and that their awareness of the contents of the bulletin board could be presumed. This contention seems plausible on its face, but all four plaintiffs have submitted affidavits swearing that they do not remember ever seeing the poster. They have also submitted affidavits from four other employees to the same effect. Although plaintiffs' failure to observe the poster does not by itself render the notice inadequate, it does constitute evidence which, combined with other evidence, could support a finding of inadequacy. We reject plaintiffs' contention that the literal wording of § 627 requires more than one notice in every instance, but agree that under certain circumstances a single notice might not suffice for a large multi-floor establishment.

An evidentiary hearing to resolve this issue should focus on the reasonableness of posting a single notice in a location the size of Home Insurance Company's Manhattan headquarters; whether the strategy of using a single poster was relied upon in other circumstances where the management wished to convey information to employees; and any other circumstances which would be relevant to a determination of the adequacy of the notice.

If the employer's posted notice is found inadequate, then the 300-day limitations period will be tolled for each plaintiff for such time as that plaintiff remained without actual knowledge of the requirements of § 626(d). Merely having access to an attorney will not be considered sufficient to charge a plaintiff with knowledge of the requirements.

■■■ If the posted notice is found adequate, or plaintiffs are discovered to have had actual knowledge of the requirements, the court must then determine whether there are factors which tend to excuse the untimely filing of the charges or demonstrate that plaintiffs were not sleeping on their rights, whether the statutory purposes of conciliation and notice to defendant have been served notwithstanding the defective filing, *see Dartt v. Shell Oil Co., supra,* 539 F.2d at 1261, and whether defendant has suffered actual prejudice. *See Love v. Pullman Co.,* 404 U.S. 522, 526–27, 92 S.Ct. 616, 618–19, 30 L.Ed.2d 679 (1972). *Also see Catlett v. Owens-Illinois, Inc.,* 454 F.Supp. 358 (W.D.Mo.1978).

Only in Pirone's case was the statutory purpose of conciliation served. Efforts were undertaken by the Department of Labor with regard to the age discrimination claims of Guthrie and Ferrara, but only after the 300-day limitations period had expired, whereupon defendant refused to conciliate. Plaintiffs argue that defendant's refusal to conciliate should estop it from raising its procedural arguments based on § 626(d). The premise is that timely Department of Labor conciliation efforts could not have made any difference given defendant's intransigence. While we reject the argument of estoppel, we note that defendant has made no claim that it was actually prejudiced by the 57-day delay. However, such a claim may be raised at the evidentiary hearing and would certainly be relevant to the issue of tolling.

In appraising factors which would tend to excuse the untimeliness of the filings we must look first at whether defendant at the time of the terminations concealed crucial, or disseminated false, information, the effect of which was to forestall plaintiffs' awareness of their *prima facie* case. In *Bonham v. Dresser Industries, Inc., supra,* the Third Circuit noted that the limitations period could be tolled while plaintiff was actively seeking an amicable resolution of his employment situation with the company, and the company was sending positive signals. 569 F.2d at 193. In *Griffin v. First Pennsylvania Bank, N. A.,* 443 F.Supp. 563

(E.D.Pa.1977), the court cited as a basis for tolling the fact that plaintiff "did not suspect that he might have been the object of age discrimination until at least one month later when he learned that three younger individuals had been transferred into his former department." 443 F.Supp. at 567. Since Guthrie and Ferrara allege that younger individuals were subsequently hired in their departments, and the reason given for terminations at the time was a need for reduce the work force, a factual issue is presented as to whether alleged concealment or misleading statements on defendant's part may furnish grounds for tolling the limitations period for 57 days. To have this effect defendant's conduct need not amount to actual fraud, but must merely have misled plaintiffs. *Catlett v. Owens-Illinois, Inc., supra,* 454 F.Supp. 358, 364.

Barker's case poses a different type of problem. He made repeated efforts to communicate with the Department of Labor, albeit at first indirectly and with the wrong division. It would be unjust to find him procedurally barred if "by the conduct of the Department of Labor itself, the plaintiff was lulled into inaction, secure in the mistaken belief that [he] had satisfied the statutory requirements." *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 110 (2d Cir. 1978). If any of Barker's letters makes apparent that he intended to present a charge of age discrimination, but the officials receiving the communication nevertheless failed to inform him that additional formalities were required, then tolling is appropriate if defendant became aware of Barker's allegations within a reasonable time after the expiration of 300 days. *See Smith v. American President Lines, Ltd., supra,* where a delay of six years was held to militate strongly against equitable tolling. 571 F.2d at 110.

*Issues of Merit*

 Defendant has also moved for summary judgment on the merits in each of the four cases. Defendant does not dispute that plaintiffs have made out a *prima facie* case of disparate treatment under the standards enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817,

36 L.Ed.2d 668 (1973) and adapted to ADEA cases. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013–14 (1st Cir. 1979); *Cova v. Coca-Cola Bottling Co.,* 574 F.2d 958, 959 (8th Cir. 1978); *Marshall v. Arlene Knitwear, Inc.,* 454 F.Supp. 715, 723–24 (E.D.N.Y.1978), *aff'd in part and rev'd in part without opinion,* 608 F.2d 1369 (2d Cir. 1979) (affirmed as to liability, reversed as to calculation of damages). Defendant's motion is based on its claim of an alternative justification for the firings: that there was a need to reduce staff and preference was given to younger employees with higher performance ratings. However, both aspects of defendant's alternative justification raise factual issues which cannot be resolved on a motion for summary judgment. Plaintiffs contend that these reasons were pretextual and that some of the comparisons in performance ratings were specious, and that some of the planned reductions in staff never took place. In addition, there is the suggestion that a desire to keep Guthrie's, Ferrara's and Barker's pensions from vesting may have been a substantial motivating factor in their terminations. If this contention is supported by sufficient proof, there is authority for finding an ADEA violation based on this motive. *Marshall v. Arlene Knitwear, Inc., supra; Bishop v. Jelleff, Associates,* 398 F.Supp. 579 (D.D.C.1974).

Defendant argues that plaintiffs were laid off because they had "less potential" than other employees. Plaintiffs respond that the employer's subjective assessment of potential will often be coextensive with the employee's age. Since defendant does not allege either incompetence or insubordination on plaintiffs' part, a factual question is raised as to whether the assessment of potential might indeed be too closely related to age to be given credence as an alternative justification. While potential is analytically separable from age under certain circumstances, the two usually are intertwined in sufficiently complicated ways to make resolution by summary judgment inherently inappropriate. Defendant's motion for summary judgment on the merits is denied. The procedural issues discussed *su-*

*pra* will be resolved after an evidentiary hearing prior to trial.

IT IS SO ORDERED.