Theodore TEVELSON

v.

**LIFE AND HEALTH INSURANCE COMPANY OF AMERICA.**

Civ. A. No. 83–11.

United States District Court, E.D. Pennsylvania.

Aug. 20, 1986.

---

Kenneth L. Oliver, Deborah C. Applebaum, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for plaintiff.

Alan B. Epstein, Kirschner, Walters & Willig, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

VanARTSDALEN, Senior District Judge.

Plaintiff Theodore Tevelson brought this action against Life and Health Insurance Company of America (Life and Health) pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. The action was tried before a jury in January 1986, and the jury found through special interrogatories that defendant willfully discriminated on the basis of age in discharging plaintiff. The jury awarded back pay amounting to $23,513 and front pay amounting to $177.00. On the basis of the finding of willfulness, the court entered a verdict in favor of the plaintiff in the amount of $47,203.00, representing front pay plus double back pay.

Defendant filed timely motions for judgment notwithstanding the verdict, for a new trial and to amend the verdict. After a long delay caused by defendant's failure to file a timely brief in support of its motions upon receipt of the transcript, briefing is now complete on defendant's post trial motions. Plaintiff has filed a motion to strike or dismiss defendant's post trial motions on the basis of defendant's failure to file a timely brief in support of those motions.

## I. *Plaintiff's Motion to Strike*

The pattern of dilatoriness in this action dating from its inception has been appalling. Defendant failed to provide timely responses to discovery, failed to file its pretrial memorandum on time and failed to file an answer to the plaintiff's complaint for almost two years. *See* Memorandum and Order, May 3, 1985 (Docket Entry No. 24). On May 3, 1985 the court ordered counsel for defendant to pay plaintiff $500 sanctions in connection with the failure to file an answer to the complaint.

▉ Despite the astounding pattern of dilatoriness, striking defendant's post trial motions is not the appropriate sanction for defendant's failure to timely file its brief. The Third Circuit Court of Appeals has repeatedly stated that sanctions denying the opportunity for cases to be resolved on their merits are to be avoided where possible. *See, e.g., Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863, 867 (3d Cir. 1984). The "preferable sanction for [a] pattern of attorney delay ... [is] to impose the excess costs caused by such conduct directly upon the attorney, with an order that such costs are not to be passed on to the client, directly or indirectly." *Id.* at 869.

Defendant retained new counsel for trial of this matter after the court awarded sanctions in connection with the failure to file an answer. Current counsel cannot be charged with responsibility for past abuses in this case, but given his knowledge of the history of this case, he should have been particularly careful to avoid the situation that has arisen.

The trial transcripts were completed and filed on March 18, 1986. The court ordered defendant to file its brief on the post trial motions by April 25, 1986. The court signed and approved a stipulation extending the date for filing of defendant's brief to May 2, 1986. No further extensions have been granted.

On May 28, 1986, plaintiff's counsel sent defense counsel a letter noting that the time to file had passed and demanding payment on the judgment. Defense counsel responded to that letter on June 2, 1986 by letter stating in part:

Last week I sustained rather severe burn injuries as a result of a fire and explosion at my home. Quite to my surprise, when I returned to my office today, I found your letter of May 28, 1986 stating you had not received the supporting Memorandum to my earlier filed Motion for New Trial and Judgment Notwithstanding the Verdict. This document, which had been prepared and forwarded to you and the Court approximately one month ago, evidently has not reached either you, the Clerk or the Judge, and accordingly, I am taking immediate steps to have the Memorandum copied, collated and forwarded to you immediately.

The memorandum was not received by plaintiff's counsel or by the court immediately following this letter. Over one month later, on July 15, 1986, plaintiff filed his motion to strike or dismiss defendant's post trial motions. On July 25, 1986, defendant filed a response to plaintiff's motion to strike along with the brief on its post trial motions. Defense counsel explained the delay as follows: "The inadvertent actions of defendant's counsel in not submitting the previously completed brief were engendered by counsel for defendant's absence from his office on a full-time basis due to serious injuries received in an accident, including second and third degree burns of his face and arms."

The court sympathizes with defendant's counsel and regrets the serious misfortune

that has befallen him. Nevertheless, defendant's counsel is not without fault in the delay. If defendant's counsel was in a position to write the June 2, 1986 letter explaining his problems and refusing to pay the judgment, then he was also in a position to either make sure personally that the documents that were misplaced were filed immediately or delegate that responsibility to another responsible professional in his office. As a direct result of defense counsel's failure to timely file his brief, the proceeding has been delayed and plaintiff has incurred the extra expense of filing his motion to strike and his memorandum in further support of that motion.

In accordance with the dictates of *Poulis*, it is inappropriate to strike defendant's post trial motions in this situation, but defendant's counsel should bear the excess costs caused by his conduct. Defendant's post trial motions will be considered on their merits.

## II. *Defendant's Post Trial Motions*

Defendant has moved for judgment notwithstanding the verdict (n.o.v.), Fed.R. Civ.P. 50(b), and for a new trial, Fed.R. Civ.P. 59. In ruling on a motion for a judgment notwithstanding the verdict the court must test the body of the evidence for its overwhelming effect, and the court may only grant such a motion if the evidence permits no finding other than one mandating judgment in favor of the moving party. *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 119 (3d Cir.1983). If there is sufficient evidence to support a contrary finding, then the motion must be denied. *Id.; see also Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 474 (3d Cir.1973). A motion for a new trial may be granted at the discretion of the court if the verdict is against the weight of the evidence, damages assessed are excessive or inadequate, there are substantial errors of law in admission or rejection of evidence or instructions to the jury, or if a new trial is required for some other reason to prevent injustice. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189,

194, 85 L.Ed. 147 (1940); *E.J. Stewart, Inc. v. Aitken Products, Inc.*, 607 F.Supp. 883, 893 (E.D.Pa.1985); 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2805. The Third Circuit recently reaffirmed the following description of the trial judge's role in ruling on motions for judgment n.o.v. and for a new trial:

> The one motion [judgment n.o.v.] requires a judge to determine whether the evidence and justifiable inference most favorable to the prevailing party afford any rational basis for the verdict. The other [new trial] requires that the trial judge evaluate all significant evidence, deciding in the exercise of his own best judgment whether the jury has so disregarded the clear weight of the credible evidence that a new trial is necessary to prevent injustice.

*Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 789 F.2d 253, 258 (3d Cir.1986) (quoting *Zegan v. Central Railroad*, 266 F.2d 101 (3d Cir.1959)).

In support of both its motion for judgment notwithstanding the verdict and its motion for a new trial defendant contends that: (1) plaintiff was not an "employee" covered by ADEA, but rather was an independent contractor; (2) plaintiff did not prove that age was a determinative factor in his discharge; (3) the evidence does not support a finding of willfulness; and (4) the evidence establishes conclusively that plaintiff failed to exercise reasonable diligence to mitigate his damages. Specifically in support of its motion for a new trial, defendant contends that the verdict was against the weight of the evidence and that the court erred in its evidentiary rulings and/or jury instructions with respect to the employment status of the plaintiff, with respect to the mitigation requirement and with respect to willfulness of an ADEA violation.

In 1968 Theodore Tevelson began working as a debit insurance salesman for Life and Health. Fourteen years later, in July 1982, Tevelson's employment was terminated by Life and Health. Tevelson was 65 years old when he was discharged, and he

was replaced by someone who was 47 years old.

The debit insurance sold by Tevelson for Life and Health was life and home fire insurance, the premiums for which were collected by Tevelson on a weekly, bi-weekly or monthly basis. The two major aspects of Tevelson's duties were to collect the premiums due on existing policies and to solicit sales of new policies in his assigned neighborhood. His performance of his duties was satisfactory to Life and Health at least up to some point in 1981. Tevelson received Life and Health's award as outstanding salesman for the year of 1979.

In 1979, Joseph Kull was promoted from his position as a debit insurance sales agent to manager of all Life and Health debit agents. Kull became Tevelson's supervisor. Kull testified at trial that he was disappointed with Tevelson's performance in 1981 and 1982 because Tevelson failed to collect premiums at the 95% collection rate desired by the company, because he sold a significant number of new policies over one period and then failed to sell sufficient new policies and allowed a number of policies to lapse over another period, and because he refused to cooperate with Kull and Kull's assistant, Raymond Herman, in their efforts to have Herman assist Tevelson's selling new policies.

■ There is no doubt that plaintiff presented at trial a sufficient prima facie case of age discrimination. He was in the protected age group; there was evidence that he was qualified for the position; he was discharged from the position; and a younger person assumed his duties. *Cf. Smithers v. Bailar*, 629 F.2d 892, 894–95 (3d Cir.1980); *Madreperla v. Willard Co.*, 606 F.Supp. 874, 876 (E.D.Pa.1985). Moreover, defendant clearly presented evidence to suggest legitimate, nondiscriminatory reasons for the termination. The issue faced by the jury and the issue the court must consider in ruling on these post trial motions is the ultimate issue whether age was a determinative factor in Life and Health's decision to terminate Tevelson's

employment. *Cf. Berndt*, 789 F.2d at 257 ("once the district court denied [defendant's] motion for directed verdict and ordered that the case proceed, the focus of inquiry shifted to deciding the ultimate discrimination issue").

■ A review of all of the evidence presented confirms that there was ample evidence to support the jury's findings of discrimination and willful violation of the ADEA and that the jury's verdict was not against the clear weight of the credible evidence. Defendant has not established that it is entitled to judgment notwithstanding the verdict or to a new trial.

Plaintiff's troubles with his supervisors began in 1981, the year in which he turned 65. Plaintiff testified that Kull, on one occasion in April 1982, called him into his office, asked him how old he was, and then told him to sign up for Social Security because he was through at Life and Health. There was evidence that the company was concerned about the high rates being paid for health benefits for older workers.

There was evidence impeaching defendant's proffered reasons for discharging plaintiff. An analysis of defendant's records effectively refuted at least some of defendant's characterizations of plaintiff's poor performance. A comparison of plaintiff's performance statistics with those of other agents revealed that plaintiff's performance ranked relatively high among the agents even for the 1981–1982 period. There was also evidence of poor performers who were younger than Tevelson and were not discharged.

There was evidence that Life and Health made employment decisions on the basis of an employee's "potential," and that this basis for retention or discharge inherently discriminated on the basis of age. There was evidence that Life and Health's policy of demanding or expecting consistent growth in the number of policies and the amount in premiums handled by each agent was discriminatory because it was more difficult for older workers who had accu-

mulated a large amount of business preventing the lapsing of policies while also soliciting new business.

Kull testified that, prior to the commencement of this lawsuit, he had no knowledge of the ADEA. This testimony would support several conflicting inferences. One who has no knowledge of the ADEA might be more likely to discriminate on the basis of age because he or she does not know that such discrimination is against the law. One who has no knowledge of the ADEA might be less likely to commit a willful violation of the Act on the basis that he or she knew that his or her conduct was prohibited by the Act, but more likely to commit a willful violation on the basis that he or she showed reckless disregard for the matter whether his or her conduct was prohibited by the Act. Finally, a jury could believe that a person professing no knowledge of the Act is simply lying, and such testimony could support an inference of willful violation.

In sum, weighing all of the evidence, including that discussed above, there is ample evidence to support the jury's verdict finding age discrimination and a willful violation of the ADEA. To the extent defendant seeks a new trial or judgment notwithstanding the verdict on the basis that discrimination was not proved and that there was insufficient evidence of willfulness, defendant's motions must be denied. This was a classic example of a case with evidence adequate to support a verdict for either plaintiff or defendant. The jury weighed the evidence and reached its verdict, and there is no basis for overturning its decision.

█ Defendant contends that plaintiff cannot recover for a violation the ADEA because he was not an "employee" protected by the Act. Defendant admitted in its answer to the complaint, in deposition testimony read into the record at trial and in its pretrial memorandum read into the record at trial that plaintiff was employed by defendant. These admissions preclude defendant from asserting now that plaintiff was an independent contractor and not an employee.

█ Defendant also contends that the court should have held that defendant could not recover damages for any period after his last contact with another insurance company about employment because defendant failed to mitigate damages after that point. The issue of mitigation was appropriately submitted to the jury. Certainly plaintiff's efforts to mitigate damages go beyond his contact with other insurance companies. He increased his hours on his second job at the Philadelphia Inquirer, and did so to such a successful degree that the jury awarded only $177 in front pay. The jury appropriately determined the amount of damages taking into account plaintiff's duty to mitigate and his obtaining alternate employment.

Finally, the defendant contends that the court erred in its instructions to the jury regarding willfulness of an ADEA violation. The instruction to the jury followed the precise language approved by the Supreme Court in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). The defendant did not object to that instruction. Defendant's objection at this point is barred under Federal Rule of Civil Procedure 51. Regardless of that procedural bar, it is clear there was no error.

For the reasons stated above, all of defendant's post trial motions will be denied. In addition, defendant's counsel will be required to pay plaintiff's expenses incurred with respect to his motion to strike or dismiss defendant's post trial motions.

## ORDER

Upon consideration of defendant's motions for judgment notwithstanding the verdict, for a new trial and/or to amend the verdict and plaintiff's motion to strike or dismiss defendant's post trial motions and all supporting and opposing memoranda of law, for the reasons stated in the accompanying memorandum,

It is Ordered that:

(1) defendant's motion for judgment notwithstanding the verdict is denied;

(2) defendant's motion for a new trial is denied;

(3) defendant's motion to amend the verdict is denied; and

(4) defendant's counsel shall pay plaintiff three hundred and fifty dollars ($350) in expenses incurred with respect to plaintiff's motion to strike or dismiss defendant's post trial motions, provided that either party may, within five (5) days of the date of this order, file a request for a hearing to determine the amount of reasonable expenses in the event that it believes the figure of $350 is inappropriate.

See also 626 F.Supp. 512.

It is further Ordered that if no request for a hearing is filed, the $350 shall be paid within twenty (20) days of the date of this order. It is further Ordered that defendant's counsel shall not directly or indirectly pass the cost of this sanction on to his client.