892 F.2d 1434
 51 Fair Empl.Prac.Cas. (BNA) 1391,
52 Empl. Prac. Dec. P 39,548, 58 USLW 2463,
29 Fed. R. Evid. Serv. 355
 D. James MERRICK, Plaintiff-Appellant,
v.
FARMERS INSURANCE GROUP, a conglomerate insurance company,
consisting of Farmers Insurance Exchange, Fire Insurance
Exchange, Farmers New World Life Insurance, Mid-Century
Insurance Company and Farmers Insurance Company of Idaho,
Defendant-Appellee.
 No. 88-3934.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 12, 1989.
Decided Jan. 3, 1990.
 
 Beth M. Rivers, Donnelly, Huizenga, Wahl, Hagan & Hergt, P.C., Detroit, Mich., for plaintiff-appellant.
 Bobbi K. Dominick, Elam, Burke & Boyd, Boise, Idaho, for defendant-appellee.
 Appeal from the United States District Court for the District of idaho.
 Before WRIGHT, WALLACE and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 D. James Merrick ("Merrick") brought suit in the United States District Court for the District of Idaho claiming that Farmers Insurance Group ("Farmers") violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, by not promoting him due to his age and by firing him because he filed an age discrimination complaint with the State of Idaho. The district court granted summary judgment in favor of Farmers on the failure-to-promote claim. A jury returned a verdict in favor of Farmers on the retaliatory discharge claim. Merrick appeals. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 FACTS
 
 2
 Merrick began working for Farmers in December 1970. By March 1981, at the age of forty-nine, Merrick had advanced from his initial job as an underwriting trainee to Agricultural Sales Representative. Merrick generally received overall review ratings of "satisfactory" while in this latter position.
 
 
 3
 In May 1981, Farmers had an opening for a Division Area Manager ("DAM") in the Pocatello, Idaho region. Merrick asked his supervisor, Ted Wilsing, for help getting promoted to this job. Merrick claims that Wilsing recommended Merrick for the promotion and told Merrick that he would get the job. Instead, Craig Schienost, a twenty-five-year-old sales representative, got the job.
 
 
 4
 In September 1981, Merrick applied for promotion to a new position as Special Lines Representative ("SLR"). Farmers gave this job to Mick Hodges, a twenty-eight-year-old employee in the Claims Department.
 
 
 5
 As a result of Farmers' refusal to promote him to either DAM or SLR, Merrick filed an age discrimination complaint with the Idaho Department of Industrial and Labor Services on October 30, 1981. Merrick notified Farmers of the charge on November 13, 1981. Approximately three weeks later, following a Christmas party at which Farmers asserted Merrick had been guilty of gross misconduct, Farmers fired Merrick. Thereafter, Merrick filed this suit in district court.
 
 ISSUES
 
 6
 In this appeal we consider the following issues:
 
 
 7
 1. Did the district court err by granting Farmers' motion for summary judgment on Merrick's failure-to-promote claim?
 
 
 8
 2. Did the district court commit reversible error in its evidentiary rulings during trial on the retaliatory discharge claim?
 
 
 9
 3. Did the district court commit reversible error in instructing the jury?
 
 
 10
 4. Is either party entitled to attorney fees on appeal?
 
 ANALYSIS
 
 11
 A. The District Court Did Not Err by Granting Farmers' Motion for Summary Judgment on Merrick's Failure-to-Promote Claim
 
 
 12
 Merrick's failure-to-promote claim is a claim of disparate treatment under the ADEA. Such claims are analyzed by the same standard used to analyze disparate treatment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (1982). Williams v. Edward Apffels Coffee Co., 792 F.2d 1482, 1484 (9th Cir.1986).
 
 
 13
 In a Title VII disparate treatment case, a plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.
 
 
 14
 Lowe v. City of Monrovia, 775 F.2d 998, 1005 (9th Cir.1985) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)), amended by, 784 F.2d 1407 (9th Cir.1986); see also Douglas v. Anderson, 656 F.2d 528, 531 (9th Cir.1981) (citing similar language from Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[1]
 
 
 15
 Farmers apparently concedes that Merrick established a prima facie case of age discrimination in its decision to promote younger persons instead of Merrick. Similarly, Merrick does not deny that Farmers proffered reasons which, assuming that they were not pretextual, would justify its promotional decisions. The parties focus on the issue whether Farmers' proffered reasons were pretextual.
 
 
 16
 To avoid summary judgment, Merrick must demonstrate a genuine issue of material fact as to pretext. Cotton v. City of Alameda, 812 F.2d 1245, 1248 (9th Cir.1987). "A plaintiff can show pretext in two ways, 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " Id. (quoting Burdine, 450 U.S. at 256, 101 S.Ct. at 1095).
 
 1. Division Area Manager ("DAM")
 
 17
 Farmers explains that its decision to promote Schienost, rather than Merrick, to the DAM position was justified because: (1) "Merrick ... did not command the respect necessary for that position, and did not maintain the positive demeanor necessary" and (2) Schienost had been recommended by Robert McClintick, the superior of Venables and Raney, the two Farmers employees responsible for the DAM selection.[2]
 
 
 18
 Merrick puts forth several arguments to show that these proffered reasons are unworthy of credence. First, Merrick argues that McClintick's recommendation of Schienost is suspect, because McClintick had not interviewed Schienost and had met him only once. However, Merrick does not dispute McClintick's assertion that he relied on the advice of members of his staff in recommending Schienost. As the district court concluded, this reliance was not improper. Thus, the fact that McClintick was not intimately acquainted with Schienost is irrelevant.
 
 
 19
 Second, Merrick argues that Raney's decision to support Schienost's promotion instead of Merrick's was not credible. Merrick points to Raney's negative comments about Merrick without ever having interviewed Merrick, Raney's uncritical acceptance of McClintick's recommendation of Schienost, and the disparity between Raney's negative comments and Merrick's otherwise positive reviews.
 
 
 20
 However, as the district court noted, none of these facts is inconsistent with Farmers' proffered reasons for promoting Schienost instead of Merrick. Raney's decision to support Schienost's promotion, in part, because his supervisor recommended him, seems appropriate to us. Further, even though Raney did not personally interview Merrick, Merrick's desk was right outside Raney's office, thus giving Raney a firsthand view of Merrick's work habits and demeanor. As to any alleged inconsistencies between Raney's comments about Merrick and Merrick's other evaluations, Raney clearly focused on Merrick's leadership skills. That Raney found these particular skills lacking, while Merrick had received otherwise "satisfactory" reviews does not raise a triable issue of fact as to the credence of Farmers' reasons for selecting Schienost, and not Merrick, for the DAM position.
 
 
 21
 Third, Merrick argues that Farmers' reasons for not promoting him lack credibility, because these reasons were not documented until after the commencement of Merrick's suit. We disagree. That Raney waited to memorialize the reasons for his decision fails to implicate the reasons themselves. Clearly, Raney documented his reasons in response to Merrick's discrimination suit. But, as the district court noted this is not unusual. Merrick argues that the documented reasons for not promoting him should be disregarded in full because some of these reasons were unavailable at the time the promotion decision was made. We disagree. When the after-the-fact reasons are excised, sufficient reasons remain which justify Raney's decision to promote Schienost instead of Merrick.
 
 
 22
 Finally, we reach Merrick's primary argument, that he was better qualified than Schienost. The evidence of his qualifications includes the recommendation of his supervisor, Wilsing, Merrick's greater experience, and his somewhat better job performance. However, Merrick offers no evidence to refute Raney's assertion that Merrick lacked the professionalism and the attitude required for the DAM position. Raney had the opportunity to observe Merrick and had reviewed Merrick's personnel file on a previous occasion. Essentially, Merrick responds that Raney's testimony is not credible, but as we have noted, there is no support for this argument. Thus, Merrick failed to raise a triable issue of fact that Farmers' reasons for denying him the DAM position were pretextual.
 
 2. Special Lines Representative ("SLR")
 
 23
 Wells, Farmers' executive in charge of selecting the new SLR, chose the younger Hodges over Merrick. Farmers explains that Wells chose Hodges because of Hodges' claims background. Merrick offers four arguments to show pretext.
 
 
 24
 Merrick first notes that Wells commented he chose Hodges because he was "a bright, intelligent, knowledgeable young man." Merrick argues this comment is sufficient to raise a triable issue of fact whether Wells refused to promote Merrick because of his age. Comments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim. See Hansard v. Pepsi-Cola Metro. Bottling Co., 865 F.2d 1461, 1466 (5th Cir.) (Sneed, J.), cert. denied, --- U.S. ----, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989); Samarzia v. Clark County, 859 F.2d 88, 91 (9th Cir.1988), amended by, 866 F.2d 1185 (9th Cir.1989).
 
 
 25
 On the other hand, "stray" remarks are insufficient to establish discrimination. See Hopkins, 109 S.Ct. at 1791 (plurality); id. at 1804 (O'Connor, J., concurring); id. at 1806 (Kennedy, J., dissenting); see also Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314-16 (6th Cir.1989) (finding that a "single, isolated discriminatory comment" by plaintiff's immediate supervisor was insufficient to trigger burden shift or to avoid summary judgment for defendant); Smith v. Firestone Tire and Rubber Co., 875 F.2d 1325, 1330 (7th Cir.1989) (noting that stray "remarks, ... when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decisionmaker in issue"). Wells' alleged comment is a "stray remark." Without more, Merrick has made no showing that the decision not to promote him was based on age.
 
 
 26
 Second, Merrick contends that Farmers' policy of identifying employees as having "outstanding potential" effectively discriminates against older employees. This argument has two flaws. First, Wells was not aware of Hodges' status on the "outstanding potential" list. Thus, the "outstanding potential" designation is irrelevant to Merrick's claim.
 
 
 27
 Furthermore, Merrick has produced no evidence to support his assertion that the policy has an adverse impact on older employees. Cf. Sorosky v. Burroughs Corp., 826 F.2d 794, 804 (9th Cir.1987) (rejecting inferences based on inadequate statistical analysis). Merrick relies on dicta in a district court opinion that: "While potential is analytically separable from age under certain circumstances, the two usually are intertwined in sufficiently complicated ways to make resolution by summary judgment inherently inappropriate." Pirone v. Home Ins. Co., 507 F.Supp. 1281, 1289 (S.D.N.Y.1981), aff'd without published opinion, 742 F.2d 1430 (2d Cir.1983). However, Pirone is distinguishable because the defendant-employer in Pirone explicitly relied on the plaintiffs' perceived lack of potential to justify terminating the plaintiffs. Id. The other case cited by Merrick, Tevelson v. Life and Health Ins. Co. of America, 643 F.Supp. 779, 783 (E.D.Pa.1986), aff'd without published opinion, 817 F.2d 753 (3d Cir.1987), is inapposite, because the plaintiff in Tevelson apparently had statistical evidence to establish the relation between age and perceived potential at his company.
 
 
 28
 Merrick's third argument to show pretext essentially restates his assertion that Raney did not have adequate information to appraise Merrick's management abilities. Our previous discussion of Raney's review of Merrick's personnel file and opportunity to observe Merrick's work forecloses this argument.
 
 
 29
 Finally, Merrick contends that Wells' explanation that he chose Hodges for the SLR position due to his claims background is unworthy of credence because Merrick met the SLR's job prerequisites while Hodges did not. Apparently, claims experience was not even mentioned in the SLR job description. On the other hand, Merrick does not challenge Wells' assertion that another executive had recommended to Wells that he hire an applicant with claims experience. Moreover, Merrick has made no showing that the desire to have a person in the SLR slot with claims experience was a pretext for discriminating against Merrick.
 
 
 30
 In short, Merrick has failed to present sufficient evidence relevant to the pretext issue to show the existence of a genuine issue of material fact. Therefore, summary judgment in favor of Farmers was appropriate.
 
 
 31
 B. The District Court Did Not Commit Reversible Error in its Evidentiary Rulings During Trial on the Retaliatory Discharge Claim
 
 
 32
 Merrick appeals several evidentiary rulings made during the course of the trial. We review these rulings under an abuse of discretion standard and note that harmless errors do not justify reversal. See United States v. Kirk, 844 F.2d 660, 663 (9th Cir.) (hearsay rulings reviewed for abuse of discretion), cert. denied, --- U.S. ----, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988); Sochin v. Commissioner, 843 F.2d 351, 355 (9th Cir.) (relevancy determinations reviewed for abuse of discretion), cert. denied, --- U.S. ----, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988); Fenner v. Dependable Trucking Co., 716 F.2d 598, 603 (9th Cir.1983) (noting that evidence erroneously admitted is harmless unless it affects substantial rights of the parties or is inconsistent with substantial justice). We discuss each challenged ruling in turn. We do not address arguments raised by Merrick for the first time in his reply brief. Thompson v. Commissioner, 631 F.2d 642, 649 (9th Cir.1980), cert. denied, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981).
 
 
 33
 1. Admission of Merrick's Older Performance Evaluations
 
 
 34
 Merrick argues that certain performance evaluations completed in the 1970's and contained in Exhibits 60, 66 and 67 were irrelevant and that even if they had probative value they should have been excluded under Rule 403. We disagree. The decisionmakers at Farmers who considered Merrick's termination reviewed his entire personnel file when they considered alternative forms of discipline. The file included the exhibits in question. Thus, the performance evaluations contained in Exhibits 60, 66 and 67 were relevant to the decision to terminate Merrick. The Exhibits were also relevant to an issue raised by Merrick himself, namely his contention that Farmers had violated its own policies by terminating him without giving him a chance to improve himself.
 
 
 35
 We conclude that the district court did not abuse its discretion in admitting Exhibits 60, 66 and 67 into evidence.
 
 2. Admission of Photograph
 
 36
 Merrick argues that a photograph depicting participants at the Christmas party preceding his termination should not have been admitted because (1) the photograph was concealed during discovery and (2) the photograph was not properly authenticated. The photograph showed one person dressed in a Santa Clause suit, and two females dressed as "Santa's Helpers."
 
 
 37
 Merrick's counsel did not specifically request production of the photograph during discovery, although arguably some of the more general interrogatories could be interpreted as calling for its production. In any event, it was not until trial that a dispute arose as to what some of the participants at the party were wearing. Farmers offered the photograph to resolve this dispute. The district court noted that Farmers could not have anticipated this evidentiary development. Merrick was not in the picture. Under these circumstances, we cannot say that the district court abused its discretion in admitting the photograph into evidence over Merrick's discovery objection. See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 515 n. 9 (9th Cir.1985).
 
 
 38
 As to Merrick's authentication argument, Merrick failed to specify this as his ground for objection in the district court. He stated only that he did not "think there [had] been proper foundation or relevance for the" photograph. He did not explain that his objection was based on authentication rather than relevance grounds. And, as we have previously noted, the photograph was relevant to the dispute over the type of clothing the Santa's Helpers were wearing.
 
 
 39
 3. Statements of Farmers' Agents and District Manager
 
 
 40
 Merrick attempted to testify as to statements made by two of Farmers' insurance agents and one of its district managers. The statements were about what had transpired at the Christmas party. The district court sustained a hearsay objection to this testimony. Merrick argues the statements are not hearsay because they are admissions by Farmers' agents.
 
 
 41
 Evidence Rule 801(d)(2)(D) provides that a statement is not hearsay if it is "offered against a party and is ... a statement by the party's agent ... concerning a matter within the scope of the agency ... made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D). As the proponent of the evidence, Merrick had the burden to demonstrate that these "agents' " statements "concerned a matter within the scope of the agency." See Oki America, Inc. v. Microtech Int'l, Inc., 872 F.2d 312, 314 (9th Cir.1989). Merrick did not make this showing. He did not establish that the insurance agents and the district manager were "agents" of Farmers as opposed to independent contractors; nor did he show that their statements about the Christmas party concerned a matter within the scope of their agency. The district court properly rejected this proffered evidence as hearsay.
 
 
 42
 C. The Court Properly Instructed the Jury on Merrick's Retaliatory Discharge Claim
 
 
 43
 Merrick contends that the court improperly instructed the jury. Specifically, Merrick challenges Instruction 8-A and the court's refusal to give Merrick's instruction on disparate punishment.
 
 
 44
 "We review the jury instructions as a whole to determine 'whether the instructions insure that the jury understands the issues in the case and is not misled in any way.' " Gilchrist v. Jim Slemons Imports, 803 F.2d 1488, 1495 (9th Cir.1986) (quoting Underhill v. Royal, 769 F.2d 1426, 1433 (9th Cir.1985)). The district court has "broad discretion in formulating the instructions and need not give an instruction in the precise language proposed by the" requesting party. United States v. Hayes, 794 F.2d 1348, 1351 (9th Cir.1986), cert. denied, 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). "An error in jury instructions that relates to the 'substantial rights of a party is grounds for reversal unless it affirmatively appears from the whole record that it was not prejudicial.' " Gilchrist, 803 F.2d at 1496 (quoting Cancellier v. Federated Dept. Stores, 672 F.2d 1312, 1316 (9th Cir.), cert. denied, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982)).
 
 
 45
 We rely on cases involving retaliation claims brought under Title VII or Section 1981 as well as the ADEA. Few published opinions involve ADEA retaliatory claims. Those circuits that have considered ADEA retaliation claims have generally adopted the analysis used in Title VII cases without comment. See, e.g., Dominic v. Consolidated Edison Co., 822 F.2d 1249, 1254 (2d Cir.1987); Powell v. Rockwell Int'l Corp., 788 F.2d 279, 284-85 (5th Cir.1986); cf. Mitchell v. Keith, 752 F.2d 385, 391 (9th Cir.) (applying age and race discrimination case law to a section 1981 retaliation case), cert. denied, 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985). This approach is consistent with Ninth Circuit cases involving ADEA age discrimination claims. See, e.g., Williams, 792 F.2d at 1484; Douglas, 656 F.2d at 531.
 
 1. Instruction 8-A
 Instruction 8-A stated that:
 
 46
 An employee is not protected by the Age Discrimination in Employment Act when he violates legitimate company rules, knowingly disobeys company orders, disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals.
 
 
 47
 Merrick argues this general instruction is misleading because there was no evidence at the trial that he had done any of the things described by it.
 
 
 48
 While it appears the only part of Instruction 8-A which would apply to Merrick is the part that mentions violations of company rules, any possibility that the jury was misled by the remaining parts of the instruction is dispelled by Instruction 9-A. This instruction provided:
 
 
 49
 You are instructed that there may be more than one factor in defendant's decision to terminate plaintiff's employment; but plaintiff is entitled to recover only if one such factor was his age discrimination complaint, and if, in fact, it was the determining factor of whether or not plaintiff was retained or discharged, in that but for the age discrimination complaint, plaintiff would not be terminated.
 
 
 50
 Instructions 8-A and 9-A read together clearly state that the existence of a legitimate basis for terminating Merrick would not save Farmers if the retaliatory motive was the "but for" cause of his discharge. This is an adequate statement of the law as it applies to pretext cases.[3] See Wrighten v. Metropolitan Hosps., Inc., 726 F.2d 1346, 1357 (9th Cir., 1984) (applying a "but for" analysis to title VII retaliatory discharge); Cassino v. Reichhold Chemls., Inc., 817 F.2d 1338, 1343-44 (9th Cir.1987) (requiring either a "determining factor" or "but for" instruction for ADEA age discrimination claim), cert. denied, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988); Powell, 788 F.2d at 282 (affirming a "determinative factor" analysis); Mitchell, 752 F.2d at 391 (same).
 
 
 51
 2. Merrick's Proposed Instruction Relating to Disparate Punishment
 
 
 52
 Merrick also appeals the district court's refusal to instruct the jury that: "In addressing the defendant's explanation for the plaintiff's discharge, you may also consider whether the defendant treated the plaintiff differently than other employees who had not filed a charge of age discrimination against the defendant." The district court refused this instruction ruling that Merrick could adequately cover the issue in his closing argument.
 
 
 53
 Merrick's proposed instruction appears proper. See Powell, 788 F.2d at 283 (anecdote of lenient treatment was relevant). However, the court gave a generic instruction that: "Circumstantial evidence is indirect evidence, that is, proof of a chain of facts from which you could find that another fact exists, even though it has not been proved directly." Relying on this instruction, Merrick had the opportunity in his closing argument to make the logical connection between any disparate levels of punishment of others and his own termination, to the extent the evidence supported such an argument. Thus, he was not prejudiced by the court's failure to give the instruction. We conclude that any error in refusing to give Merrick's proposed instruction was harmless.
 
 D. Attorney Fees on Appeal
 
 54
 Both sides have requested attorney fees for this appeal. In ADEA cases, we may award attorney fees to plaintiffs who successfully prosecute their appeals. Compare Gilchrist, 803 F.2d at 1502 (declining to grant attorney fees for partial success) with Cancellier, 672 F.2d at 1320 (awarding partial fees for partial success on appeal). Merrick is not a prevailing party in this appeal. He is not entitled to an award of attorney fees.
 
 
 55
 We may also impose sanctions for frivolous appeals. See Building Material and Dump Truck Drivers, Local 420 v. Traweek, 867 F.2d 500, 513 (9th Cir.1989); Fed.R.App.P. 38. However, even though we have rejected all Merrick's arguments, his appeal has sufficient merit to preclude sanctions.
 
 
 56
 AFFIRMED.
 
 
 
 [1]
 After the parties filed their briefs in this case, the Supreme Court decided Price Waterhouse v. Hopkins, --- U.S. ----, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). At oral argument the parties discussed what effect Hopkins had on this case
 In Hopkins, a plurality of the Court held that once an employee shows that an impermissible motive played a "motivating" part in an employment decision, the defendant then has the burden to prove that it would have reached the same decision even in the absence of the impermissible motive). Id. 109 S.Ct. at 1787-88 (plurality). See also id. at 1795 (White, J., concurring) (same); id. at 1804 (O'Connor, J., concurring) (same). Hopkins' burden analysis, however, is not applicable to this case. This case is a "pretext" case, as were McDonnell Douglas and Burdine. Hopkins is a "mixed motive" case. In Hopkins, five justices reaffirmed the vitality of the McDonnell Douglas and Burdine burden analysis in pretext cases. Id. at 1788-89 (plurality); id. at 1795-96 (White, J., concurring). Therefore, we analyze the district court's rulings on summary judgment, and its jury instructions, in the present case according to the McDonnell Douglas and Burdine analysis of allocating the burden of persuasion in pretext cases, and not according to the Hopkins analysis of allocating the burden of persuasion in mixed motive cases.
 
 
 [2]
 Venables, who was acting sales manager for the Pocatello, Idaho region, was responsible for filling the DAM slot in Idaho, with Raney's approval. Raney was regional manager responsible for the Idaho-Utah region. He was Venables' immediate supervisor. McClintick was field operations manager. He was located in the Los Angeles home office and was Raney's supervisor
 
 
 [3]
 As we stated in footnote 1 supra, the burden analysis of Price Waterhouse v. Hopkins, --- U.S. ----, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) in a "mixed motive" case is not applicable to the burden analysis in this "pretext" case